# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DWAYNE WHITE, as Administrator of the ESTATE OF BRADLEY C. SCARPI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| ST. CLAIR COUNTY SHERIFF RICHARD WATSON, MAJOR PHILLIP MCLAURIN, ST. CLAIR COUNTY, OFFICER MARK J. HARRIS, SERGEANT BRIAN D. CUNNINGHAM, OFFICER RODNEY WILSON, OFFICER CHRISTOPHER LANZANTE, LIEUTENANT NANCY SUTHERLIN, SERGEANT DAVID NICHOLS, OFFICER THOMAS MESEY, OFFICER DANTE S. BEATTIE, OFFICER PATRICK FULTON, OFFICER HOWARD KURTZ, OFFICER NICOLE LIEBIG, OFFICER STEVEN J. FRIERDICH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Dwayne White, as Administrator for the Estate of his brother Bradley C. Scarpi, by his undersigned attorneys, for his complaint against Defendants St. Clair County Sheriff Richard Watson, Major Phillip McLaurin, St. Clair County, Officer Mark J. Harris, Sergeant Brian D. Cunningham, Officer Rodney Wilson, Officer Christopher Lanzante, Lieutenant Nancy Sutherlin, Sergeant David Nichols, Officer Thomas Mesey, Officer Dante S. Beattie, Officer Patrick Fulton, Officer Howard Kurtz, Officer Nicole Liebig, and Officer Steven J. Frierdich alleges as follows:

## INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Bradley C. Scarpi's rights as secured by the Fourteenth Amendment to the United States Constitution.

2. As a young man, Bradley C. Scarpi learned a trade and became a roofer. He was known to be hard worker, until a job-related back injury interrupted his career and caused him to develop an addiction to prescription pain pills. Because of his addiction, for 11 years, Mr. Scarpi spent a great deal of time cycling in and out of the St. Clair County Jail ("Jail").

3. Mr. Scarpi died because the Defendants failed to protect him and went so far as to encourage him to kill himself. After Mr. Scarpi informed Jail officials that other detainees were threatening him, a Sergeant responded by punishing Mr. Scarpi and placing him in a maximum security cell block. Mr. Scarpi told the sheriff's deputies that he was going to kill himself, and the deputies told him to "shut the f*ck up."

4. Once placed in a maximum security cell, Mr. Scarpi actively voiced his intent to commit suicide. Upon being made aware of Mr. Scarpi's suicidal ideation, one sheriff's deputy responded, "Whatever, do what you want to do." Jail officials failed to take any efforts to protect or appropriately supervise Mr. Scarpi. Approximately five hours after being re-housed in the maximum security cell, Jail officials found Mr. Scarpi hanging in his cell. Mr. Scarpi was transported to the hospital where he died less than an hour later.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

7. Bradley C. Scarpi, the decedent, was a thirty-three year old who was detained at St. Clair County Jail in Belleville, Illinois from April 10, 2014, until his suicide on May 23, 2014. Under the Americans with Disabilities Act he is a qualified person who lived with the disability of serious mental illness, including a generalized anxiety disorder. Plaintiff Dwayne White is Mr. Scarpi's brother and the duly appointed administrator of his estate.

8. Defendant Richard "Rick" Watson is the Sheriff of St. Clair County. At all times relevant to the events at issue in this case, Defendant Watson was employed by the St. Clair County Sheriff's Department in the capacity of Sheriff. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Watson promulgated rules, regulations, polices, and procedures as Sheriff of St. Clair County for the provision of certain mental health care by medical personnel and correctional officers to detainees at the St. Clair County Jail. He is sued here in his official capacity.

9. Defendant Major Phillip McLaurin is the Superintendent of the St. Clair County Jail. At all times relevant to the events at issue in this case, Defendant McLaurin was employed by the St. Clair County Sheriff's Department. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant McLaurin was responsible for implementing the policies and procedures promulgated by Defendant Watson, supervising all staff and managing all aspects of Jail operations. He is sued in his individual capacity.

10. Defendant St. Clair County is a county of the State of Illinois. It oversees the St. Clair County Sheriff's Department, which, in turn, operates the St. Clair County Jail.

11. Defendants Officer Mark J. Harris, Sergeant Brian D. Cunningham, Officer Rodney Wilson, Officer Christopher Lanzante, Lieutenant Nancy Sutherlin, Sergeant David

Nichols, Officer Thomas Mesey, Officer Dante S. Beattie, Officer Patrick Fulton, Officer Howard Kurtz, Officer Nicole Liebig, and Officer Steven J. Frierdich were employees of the St. Clair County Jail during the relevant period. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with St. Clair County Jail. These defendants are sued here in their individual capacities.

## FACTUAL ALLEGATIONS

12. On or about April 10, 2014, Mr. Scarpi was arrested and taken to the St. Clair County Jail. At all times relevant to the events at issue in this case, Mr. Scarpi was housed at the Jail.

### Mr. Scarpi Requested to be Re-housed in Another Cell Block Hours Before He Committed Suicide

13. On May 23, 2014, around 4:00 p.m., Mr. Scarpi told Defendant Officer Mark Harris that he needed to be moved out of cell block AB because he was being threatened by other detainees. Defendant Officer Harris escorted Mr. Scarpi to Defendant Sergeant Brian Cunningham's office. Mr. Scarpi then informed Defendant Sergeant Cunningham that two detainees who were on lockdown in cell block AB were threatening him with physical harm—when these detainees were let out to shower, they would come by his cell and threaten to hurt him when they got off lockdown. Defendant Sergeant Cunningham told Mr. Scarpi that he would move him and place "Keep Separates" between him and the two detainees. Defendant Sergeant Cunningham instructed Defendant Officer Harris to re-house Mr. Scarpi in Lower Level B Block.

14. Defendant Officer Harris and Defendant Officer Rodney Wilson escorted Mr. Scarpi to Lower Level B Block. While in route, Mr. Scarpi told the Defendant Officers that he could not be housed in Lower Level B Block because the two detainees that were threatening

him had friends in that cell block.  At around 4:30 p.m., Defendant Officer Wilson relayed this information to Defendant Sergeant Cunningham, and Defendant Sergeant Cunningham instructed the Defendant Officers to re-house Mr. Scarpi in the maximum security cell block E-Max, cell #5.

**Defendants Failed to Protect Mr. Scarpi from a Known and Substantial Risk of Suicide**

15. It is widely known throughout the correctional field and extensively documented that suicides in jails occur at a rate several times greater than in the general public.  A recent study from the U.S. Department of Justice Bureau of Justice Statistics found that suicide has been the leading cause of death in jails every year since 2000.  U.S. Dep't of Justice, Bureau of Justice Statistics, *Mortality in Local Jails and State Prisons, 2000-2013 – Statistical Tables*, August 2015 (available at http://wwwlbjs.gov/index.cfm?ty=pbdetail&iid=5341).  A 2010 study published by the U.S. Department of Justice National Institute of Corrections reported that 47% of jail suicides were detainees who had a history of substance abuse, and 70% of jail suicides occurred within four months of confinement.  Lindsey Hayes, National Center on Institutions and Alternatives, *National Study of Jail Suicide 20 Years Later*, April 2010, at xi (available at http://static.nicic.gov/Library/024308.pdf).  A 2003 study published by the Human Rights Watch also reported that "[y]oung men, persons with mental illness, alcohol and drug addicts, and people who are in custody, are amongst the most at-risk groups for suicide."  Human Rights Watch, *Ill-Equipped, U.S. Prisons and Offenders with Mental Illness*, Oct. 2003, at 186 (available at https://www.hrw.org/report/2003/10/21/ill-equipped/us-prisons-and-offenders-mental-illness).

16. Despite this institutional knowledge, St. Clair County Jail has no formal policies, procedures, or regulations regarding suicide prevention.  Further, the employees at St. Clair

County Jail are not adequately trained in suicide prevention—their training consists of one 8 hour class on mental health and suicide prevention. Thus, Jail employees do not have the training or resources to sufficiently monitor and protect detainees who are at risk for suicide.

17. Additionally, at all times relevant to the events at issue in this case, St. Clair County Jail was over capacity. Specifically, on May 23, 2014, the day Mr. Scarpi committed suicide, the Jail was over-populated by 17 detainees.

18. On information and belief, during this period of overcrowding, the Jail was also understaffed. The understaffing contributed to the ineffective medical and mental health care at the Jail.

19. On information and belief, the overcrowding at the Jail also contributed to poor and unsafe living conditions: the Jail was filthy; the toilets, sinks, and showers were unsanitary; inmates were denied cleaning materials; inmates were forced to sleep on the filthy floors; foul odors of human waste were prevalent; and the Jail was infested with rodents and insects.

20. Mr. Scarpi exhibited several of the suicide risk factors—he was a young male with a history of substance abuse problems who had been in custody for approximately 6 weeks. The overcrowding and poor living conditions at the Jail further exacerbated his mental health condition.

21. Mr. Scarpi verbalized his suicidal thoughts with other persons detained at the Jail. One person who was housed at the Jail at all times relevant to the events at issue in this case reports that after Mr. Scarpi was re-housed in cell block E-Max, Mr. Scarpi told him that he was going to kill himself.

22. Mr. Scarpi also verbalized his suicidal thoughts with the Defendant Officers. When Mr. Scarpi was being escorted to cell block E-Max, he told the Defendant Officers that he

was going to kill himself. The Defendant Officers dismissed his suicidal ideations and told him to "shut the f*ck up, get in the cell." They proceeded to place him in E-Max Cell #5, which is not an adequate suicide-proof cell.

23. While in E-Max Cell #5, Mr. Scarpi told Defendant Officer Christopher Lanzante that he was going to kill himself. Defendant Officer Lanzante responded, "whatever, do what you want to do," and walked away.

24. The Defendant Officers refused to accommodate Mr. Scarpi's disability by failing to immediately move him to a suicide-proof cell upon learning about Mr. Scarpi's intent to kill himself.

25. In the hours leading up to Mr. Scarpi's suicide, the Defendant Officers failed to adequately conduct regularly scheduled cell checks. The officers never conducted a safety check on Mr. Scarpi after he was moved to the maximum security cell.

26. The Defendants knew Mr. Scarpi was a suicide risk and they failed to take measures to monitor and protect him—they failed to provide him adequate mental health services, they failed to place him in a suicide-proof cell, and they failed to conduct regular checks on him while he was in his cell. By their actions, the Defendants intentionally disregarded the known and substantial risk that Mr. Scarpi would harm himself while in their custody.

27. On May 23, 2014, around 9:40 p.m., Defendant Officer Lanzante discovered Mr. Scarpi hanging from his cell bars. One end of a sheet was tied across the upper bar of the inner cell door and the other end was looped around Mr. Scarpi's neck.

28. Mr. Scarpi was then alive but unconscious. He was transported to St. Elizabeth's Hospital where he died less than an hour later at 10:17 p.m.

29. Defendants Lieutenant Nancy Sutherlin, Sergeant David Nichols, Officer Thomas Mesey, Officer Dante S. Beattie, Officer Patrick Fulton, Officer Howard Kurtz, Officer Nicole Liebig, and Officer Steven J. Frierdich were all working at the Jail that night and responded to Officer Lanzante's request for assistance after he found Mr. Scarpi hanging in the cell. On information and belief, these Defendants also had knowledge of the fact that Mr. Scarpi was a suicide risk and failed to take any measures to monitor and protect him.

30. As Superintendent of the Jail, Defendant Major Phillip McLaurin supervised all staff and managed all aspects of Jail operations. On information and belief, Defendant Major McLaurin had knowledge of Defendant Sergeant Cunningham's decision to transfer Mr. Scarpi to a maximum security cell and also had knowledge of the fact that Mr. Scarpi was a suicide risk. Defendant McLaurin failed to take any measures to monitor and protect Mr. Scarpi.

## COUNT I
## Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. § 1983

31. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

32. Count I is alleged against all the individual Defendants.

33. Under settled United States Supreme Court authority, and in accordance with the Fourteenth Amendment, Mr. Scarpi was entitled to be free from a known and unreasonable risk of serious harm while in the custody of the St. Clair County Jail.

34. In violation of the Fourteenth Amendment, the individual Defendants knew of and disregarded a substantial risk of serious harm—that Mr. Scarpi would commit suicide.

35. In the alternative, the individual Defendants disregarded an obvious risk of serious harm or unreasonably disregarded a risk of serious harm.[1]

36. The individual Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Mr. Scarpi's constitutional rights.

37. As a result of the unjustified and unconstitutional conduct of the individual Defendants, Mr. Scarpi experienced pain, suffering, emotional distress, injury, and ultimately, death.

38. The Defendants' actions and omissions were the direct and proximate cause of the violations of Mr. Scarpi's constitutional rights, of Mr. Scarpi's death, and of the damages suffered by his heirs.

## COUNT II
### *Monell* Claim under 42 U.S.C. § 1983

39. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

40. Count II is alleged against Defendant Sheriff Watson in his official capacity.

41. In addition to Mr. Scarpi, two other detainees at St. Clair Count Jail committed suicide within the last two years:

 (a) **Joshua B. Jurcich**, a thirty-three year old, committed suicide two months before Mr. Scarpi on March 11, 2014. Mr. Jurcich hung himself hours after being beaten by correctional officers and re-housed in cell block F-Max, cell #6.

---

[1] This portion of the claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

      (b) **Damon E. Stidimire**, a nineteen-year-old, committed suicide on October 29, 2015. Mr. Stidimire hung himself in cell block C, cell #4.

42. Between January 2014 and October 2015, there were 14 suicide attempts at the Jail.

      (a) **Rachel Mills** attempted suicide by tying a sheeting around her neck on January 4, 2014.

      (b) **Jerry Davis** attempted suicide by tying a shoe string around his neck on May 20, 2014, three days before Mr. Scarpi committed suicide.

      (c) **Preston Young** attempted suicide by tying a blanket around his neck on May 22, 2014, the day before Mr. Scarpi committed suicide.

      (d) **Rodney Brown** attempted suicide by tying a sheet around his neck on July 10, 2014.

      (e) **Trey Dayton** attempted suicide by tying a cord around his neck on October 9, 2014.

      (f) **Michael Knepper** attempted suicide by cutting his wrist with a razor on three separate occasions: on November 7, 2014, on April 10, 2015, and on June 3, 2015.

      (g) **Dante Dixon** attempted suicide by tying a sheet around his neck on January 1, 2015.

      (h) **Jessica Hart** attempted suicide twice: once by tying a sheet around her neck on March 18, 2015, and a second time by tying chair straps around her neck on March 22, 2015.

(i) **Demarken Cobbs** attempted suicide by tying his pants around his neck on April 29, 2015.

(j) **Julianna Kavano-Mosley** attempted suicide by tying a sheet around her neck on July 11, 2015.

(k) **Carlos Rickman** attempted suicide by tying a sheet around his neck on August 9, 2015.

43. On information and belief, St. Clair County Jail does not have any suicide prevention policies in place.

44. During the relevant time period, Defendant Sheriff Watson had notice of widespread practices by employees at the St. Clair County Jail under which detainees with mental health issues were routinely denied access to proper mental health treatment, and detainees who were at risk of suicide were routinely denied access to safe and secure suicide prevention cells. These widespread practices are a result of the lack of formal policies, training, and supervision on the proper way to deal with detainees with mental health problems.

45. These widespread practices were allowed to flourish—and become so well settled as to constitute de facto policy of the St. Clair County Sheriff's Department—because governmental policymakers and authority over the same, namely, Sheriff Watson, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

46. Mr. Scarpi's injuries, and ultimately his death, were caused in substantial part by these widespread policies, practices, and procedures promulgated by the St. Clair County Sheriff's Department. These policies, practices, and procedures that were the cause of Mr. Scarpi's death were also the cause of Mr. Jurcich's and Mr. Stidimire's deaths.

## COUNT III
### Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132

47.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

48.     Count III is alleged against all the individual Defendants.

49.     As described more fully in the preceding paragraphs, Mr. Scarpi lived with a generalized anxiety disorder and is a qualified person with a disability under the Americans with Disabilities Act, and his disability was known to the individual Defendants. As a result, the Defendants had an obligation to accommodate his disability by housing him in a suicide-proof cell. The Defendants intentionally failed to accommodate Mr. Scarpi's disability, and these failures led to Mr. Scarpi's death.

## COUNT IV
### State Law Claim for Wrongful Death

50.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

51.     Count IV is alleged against all the individual Defendants.

52.     As described more fully in the preceding paragraphs, the individual Defendants knew that Mr. Scarpi should be monitored as a suicide risk, but failed to have him under such watch, resulting in Mr. Scarpi's wrongful death.

53.     By their acts and omissions, the individual Defendants breached their duty to provide for Mr. Scarpi's health and safety and were the proximate cause of Mr. Scarpi's death and the injuries to his heirs.

54.     The individual Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Mr. Scarpi's rights.

55. Mr. Scarpi's next of kin are his 17-year-old son, Dylan Bradley Delisle-Scarpi, and his 12-year-old-son, Bradley Scarpi Jr. Plaintiff, as administrator of the estate and on behalf of the next of kin, claims damages for the wrongful death of Mr. Scarpi, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for the mental anguish caused by this loss, as well as for funeral and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

## COUNT V
**State Law Claim for Respondeat Superior**

56. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

57. Count V is alleged against Defendant Sheriff Watson.

58. In committing the acts alleged in the preceding paragraphs, the individual Defendants were employees, members, and agents of the St. Clair County Sheriff's Department, acting at all relevant times within the scope of their employment.

59. Defendant Sheriff Watson is liable as principal for all torts committed by his agents.

## COUNT VI
**State Law Claim for Indemnification**

60. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

61. Count VI is alleged against Defendant St. Clair County.

62. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

63. The individual Defendants were employees of the St. Clair County Sheriff's Department who acted within the scope of their employment in committing the misconduct described above.

64. St. Clair County is obligated to pay any judgment entered against Sheriff Watson in an official capacity.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dwayne White, as Administrator of the estate of Bradley C. Scarpi, prays that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the Defendants in their individual capacities, and for such further additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: May 20, 2016

>Respectfully submitted,
>
>**DWAYNE WHITE**
>
>By: /s/ Vanessa del Valle
>    One of his attorneys

Locke E. Bowman
l-bowman@law.northwestern.edu
Sheila A. Bedi
sheila.bedi@law.northwestern.edu
David M. Shapiro
david.shapiro@law.northwestern.edu
Vanessa del Valle
vanessa.delvalle@law.northwestern.edu
Roderick and Solange MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271

LaToya M. Berry
Law Offices of LaToya M. Berry
901 West Main
Belleville, IL 62220
(618) 567-4837
missberry_esq@yahoo.com