IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAYNE WHITE, as Administrator of the ESTATE OF BRADLEY C. SCARPI, <br><br> Plaintiff, <br><br> v. <br><br> ST. CLAIR COUNTY SHERIFF RICHARD WATSON, *et al.*, <br><br> Defendants. | Case No. 3:16-CV-00560 <br><br> The Hon. J. Phil Gilbert <br> Magistrate Judge Donald Wilkerson |

**PLAINTIFF DWAYNE WHITE'S RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

Defendants have moved to dismiss Plaintiff Dwayne White's amended complaint, contending that Plaintiff fails to state plausible claims for relief. Doc. No. 30. Defendants' motion should be denied.

**SUMMARY OF FACTUAL ALLEGATIONS**

Bradley Scarpi was arrested and taken to the St. Clair County Jail ("Jail") on April 10, 2014. Am. Compl. ¶ 12. Mr. Scarpi lived with an addiction to prescription pain pills and, consequently, had spent a great deal of time cycling in and out of the Jail. *Id.* ¶ 2. On May 23, 2014, Mr. Scarpi informed Defendants Officer Mark Harris and Sergeant Brian Cunningham that other detainees in his cell block were threatening him with physical harm and requested to be moved out of the cell block. *Id.* ¶ 13. Defendant Sergeant Cunningham instructed Defendants Officer Harris and Officer Rodney Wilson to move Mr. Scarpi to a maximum security cell. *Id.* ¶ 14.

While being escorted to the maximum security cell, Mr. Scarpi told Defendants Officer Harris and Officer Wilson that he was going to kill himself. *Id.* ¶ 22. The Defendant Officers

dismissed Mr. Scarpi's suicidal ideations and told him to "shut the f*ck up, get in the cell." *Id.* They proceeded to place Mr. Scarpi in the maximum security cell that was not a suicide-proof cell. *Id.*

While in the maximum security cell, Mr. Scarpi continued to verbalize his suicidal thoughts to other detainees. *Id.* ¶ 21. Mr. Scarpi then directly told Defendant Officer Christopher Lanzante that he was going to kill himself. *Id.* ¶ 23. One detainee who witnessed the interaction between Mr. Scarpi and Defendant Officer Lanzante reports that Defendant Officer Lanzante responded to Mr. Scarpi, "whatever, do what you want to do," and then walked away. *Id.* Another detainee also heard Mr. Scarpi tell Defendant Officer Lanzante that he was going to kill himself. *Id.* This witness further reports that he personally also informed Defendant Officer Lanzante that Mr. Scarpi was suicidal, and Defendant Officer Lanzante responded: "Well he is just going to be a dead hanging mother f***er then." *Id.* Thus, the Jail staff knew Mr. Scarpi was suicidal and failed to take any measures to monitor and protect him. *Id.* ¶ 26. At around 9:40 p.m. on May 23, 2014, hours after he was moved to the maximum security cell, Jail staff discovered Mr. Scarpi hanging from his cell bars. *Id.* ¶ 27. He died at St. Elizabeth's hospital less than an hour later. *Id.* ¶ 28.

Plaintiff alleges six claims against Defendants. In Count I, Plaintiff alleges that the individual Defendants failed to protect Mr. Scarpi from the known and substantial risk of suicide in violation of the Fourteenth Amendment. *Id.* ¶¶ 31-38. In Count II, Plaintiff alleges a *Monell* claim against Defendant Sheriff Watson in his official capacity. *Id.* ¶¶ 39-46. In Count III, Plaintiff alleges that the individual Defendants failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 47-49. In Count IV, Plaintiff alleges a state law claim for wrongful death against the individual Defendants. *Id.* ¶¶ 50-55. In Count V,

Plaintiff alleges a state law claim for respondeat superior against Defendant Sheriff Watson in his official capacity. *Id.* ¶¶ 56-59. And in Count VI, Plaintiff alleges a state law claim for indemnification against Defendant St. Clair County. *Id.* ¶¶ 60-64.

## STANDARD OF REVIEW

The plaintiff's obligation at the pleading stage—before the plaintiff has had the opportunity to conduct any discovery and to further investigate the factual predicates of his claims—is very light. To state a claim upon which relief can be granted, the plaintiff's complaint need only contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether Plaintiff has met this standard, the Court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)).

## ARGUMENT

### I.   Plaintiff Has Properly Alleged that the Individual Defendants Failed to Protect Mr. Scarpi in Violation of His Constitutional Rights (Count I)

Defendants seek dismissal of Count I of Plaintiff's complaint, contending that Plaintiff has failed to allege any factual allegations that show that the individual Defendant Officers failed to protect Mr. Scarpi from the risk of suicide. Def. Mot. at 4-7. Contrary to Defendants'

3

argument, Plaintiff's allegations are more than sufficient to comply with the notice pleading requirements of Rule 8.

Although a failure to protect claim brought by a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, the Seventh Circuit has held that the standards for pre-trial detainees and incarcerated individuals are analogous. *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). To sufficiently plead a failure to protect claim, Plaintiff must allege that (1) Mr. Scarpi was "incarcerated under conditions posing substantial risk of serious harm" and (2) "the defendants acted with 'deliberate indifference' to [Mr. Scarpi's] health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff easily satisfies the first prong as the Seventh Circuit has consistently held that "suicide is a serious harm." *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012).

To show deliberate indifference, Plaintiff must allege that Defendants knew Mr. Scarpi faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847; *see also Key v. Kolitwenzew*, 630 F. App'x 620, 623 (7th Cir. 2015); *Estate of Miller*, 680 F.3d at 989. Plaintiff must show that Defendants had "*actual* knowledge of the risk." *Washington*, 306 F.3d at 518. This "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. "If 'the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (quoting *Farmer*, 511 U.S. at 842-43); *see also Washington*, 306 F.3d at 519 ("Under some

4

circumstances, a risk might be so obvious that actual knowledge on the part of prison officials may be inferred.").

*First*, Plaintiff has alleged facts that plausibly suggest that the individual Defendant Officers had knowledge of the substantial risk that Mr. Scarpi would commit suicide. Plaintiff alleges that Mr. Scarpi told Defendant Officers Harris and Wilson that he was going to kill himself while the officers were escorting him to the maximum security cell. Am. Compl. ¶ 22. Defendant Officers Harris and Wilson dismissed Mr. Scarpi's suicidal ideations and told him to "shut the f*ck up, get in the cell." *Id.*

Plaintiff also alleges that while Mr. Scarpi was in his maximum security cell, he told Defendant Officer Lanzante that he was going to kill himself. *Id.* ¶ 23. Defendant Officer Lanzante responded, "whatever, do what you want to do," and then walked away. *Id.* Plaintiff further alleges that another detainee in the maximum security cell block also informed Officer Lanzante that Mr. Scarpi was suicidal, and Officer Lanzante responded: "Well he is just going to be a dead hanging mother f***er then." *Id.* These facts clearly suggest that Defendant Officers Harris, Wilson, and Lanzante were aware that Mr. Jurcich was a suicide risk. *See Key*, 630 F. App'x at 620 (finding it plausible that the corrections officers knew that plaintiff faced a substantial risk of serious harm where plaintiff alleged that before each incident of self-mutilation, he informed the officers of a substantial risk of serious harm).

Plaintiff further alleges that Defendants Sergeant Brian Cunningham, Lieutenant Nancy Sutherlin, Sergeant David Nichols, Officer Thomas Mesey, Officer Dante Beattie, Officer Patrick Fulton, Officer Howard Kurtz, Office Nicole Liebig, and Officer Steven Frierdich were all working at the Jail the night Mr. Scarpi committed suicide and responded to Defendant Officer Lanzante's request for assistance after he found Mr. Scarpi hanging in his cell. Am.

Compl. ¶ 29.  It is reasonable to infer that these individual Defendant Officers all had knowledge that Mr. Scarpi was a suicide risk considering the fact that Mr. Jurcich was actively vocalizing his suicidal thoughts to other staff at the Jail as well as other detainees.  *See Estate of Miller*, 680 F.3d at 990 (finding it plausible that the prison security staff on duty the day of the plaintiff's suicide had knowledge that the plaintiff was a suicide risk).  Additionally, Plaintiff alleges that Defendant Major Phillip McLaurin is the Superintendent of the Jail and was working in this capacity at the relevant time period.  Am. Compl. ¶¶ 9, 30.  It is therefore reasonable to infer that as Superintendent, Major McLaurin knew that Mr. Scarpi had been transferred to a maximum security cell and that he was a suicide risk.[1]

      Finally, Plaintiff alleges that it is widely known throughout the correctional field and extensively documented that suicides in jails occur at a rate several times greater than in the general public.  *Id.* ¶ 15.  And Plaintiff alleges that Mr. Scarpi exhibited several of the suicide risk factors—he was a young male with a history of substance abuse problems who had been in custody for approximately 6 weeks.  *Id.* ¶ 20.  Moreover, Plaintiff alleges that another detainee, Joshua Jurcich, had committed suicide two months before Mr. Scarpi.  *Id.* ¶ 41.  And three other detainees—Rachel Mills, Jerry Davis, and Preston Young—had attempted suicide in the months and weeks prior to Mr. Scarpi's death.  *Id.* ¶ 42.  Mr. Jurcich's suicide and all the other suicide attempts should have alerted all of the individual Defendants of the need to take suicide threats seriously.  Therefore, it is plausible to infer that the risk that Mr. Scarpi would commit suicide was so obvious that the individual Defendant Officers must have been aware of the risk.  *See Washington*, 306 F.3d at 519.

---

[1]  Defendants argue that Plaintiff has not stated a claim against Sheriff Watson in his individual capacity, however, Plaintiff is only suing Sheriff Watson in his official capacity.

*Second*, Plaintiff has alleged facts that plausibly suggest that the individual Defendant Officers disregarded the risk by failing to take reasonable measures to prevent Mr. Scarpi from committing suicide. Plaintiff alleges that none of the individual Defendant Officers took measures to monitor or protect Mr. Scarpi—the officers failed to provide him adequate mental health services, they failed to place him in a suicide-proof cell, and they failed to adequately conduct regular checks on him while he was in his maximum security cell. Am. Compl. ¶¶ 24-26, 29-30. *See Key*, 630 Fed. App'x at 622 (finding that the plaintiff sufficiently stated a failure to protect claim where he alleged that the corrections officers failed to take necessary preventive measures before he harmed himself); *Estate of Miller*, 680 F.3d at 990-91 (finding that the plaintiff alleged sufficient facts to suggest that the security defendants failed to take reasonable steps to prevent the decedent's suicide); *Jones v. Hileman*, No. 07-CV-0606-MRJ-DGW, 2009 WL 249093, at *6 (S.D. Ill. Feb. 2, 2009) (finding that the "complaint include[d] sufficient allegations for a showing that the officers acted with deliberate indifference" where plaintiffs "allege[d] that the Defendants disregarded the obvious risk [that the decedent would commit suicide] by preventing proper medical personnel from interacting with him").[2]

---

[2] Plaintiff's complaint plausibly alleges facts to satisfy the current standard in the Seventh Circuit for pre-trial detainee failure to protect claims: deliberate indifference—a defendant must know of and disregard a subjective risk of harm. The Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), calls this standard into question. In *Kingsley*, the Court held that excessive force claims brought by pre-trial detainees are to be analyzed under an objective reasonableness standard, not a subjective standard. *Id.* at 2472-73. Even though *Kingsley* was specifically about excessive force claims, the *en banc* Ninth Circuit recently held that *Kingsley* applies to failure to protect claims brought by pre-trial detainees as well. *Castro v. County of Los Angeles*, No. 2016 WL 4268955, at *6 (9th Cir. Aug. 15, 2016). Therefore, Plaintiff preserves the argument that his failure to protect claim should be analyzed under an objective standard rather than a deliberate indifference standard. Under an objective standard, Plaintiff must establish: (1) that the Defendants made an intentional decision with regard to the conditions under which Mr. Scarpi was confined that put Mr. Scarpi at a substantial risk of suffering serious harm; and (2) that Defendants did not take reasonable available measures to

Accordingly, Plaintiff has sufficiently stated a claim against the individual Defendant Officers for failing to protect Mr. Scarpi from the known and substantial risk of suicide.

## II. Plaintiff Has Properly Alleged a *Monell* Claim Against Sheriff Watson In His Official Capacity (Count II)

Defendants seek dismissal of Count II of Plaintiff's complaint, contending that Plaintiff has failed to assert any factual allegations demonstrating that a widespread practice existed that deprived Mr. Scarpi of his constitutional rights. Defs. Mot. at 7-8. Defendants' argument lacks merit.

To state a Section 1983 claim against Sheriff Watson in his official capacity under *Monell*, Plaintiff must allege that Mr. Scarpi suffered an injury caused by the Sheriff's Department's official policies or customs. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). Plaintiff can demonstrate an official policy or custom in three ways: (1) by establishing the existence of an express policy that causes a constitutional deprivation when enforced; (2) by establishing the existence of a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) by showing that the constitutional injury was caused by a person with final policymaking authority. *Estate of Sims ex rel. Sims*, 506 F.3d at 515.

Plaintiff has alleged facts that plausibly suggest the existence of a widespread practice at the Jail that caused Mr. Scarpi's injury. Plaintiff alleges that the Jail does not have any suicide prevention policies in place and the training Jail employees received regarding suicide prevention is inadequate. Am. Compl. ¶¶ 5, 43. "When an entity has been deliberately indifferent and failed to implement appropriate policies to address known problems, including

---

abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved. Plaintiff has sufficiently pleaded facts to meet this standard.

suicide prevention procedures in a county jail, it is actionable under *Monell*." *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010); *see also Sharif v. Ghosh*, No. 12 C 2309, 2014 WL 1322820, at *4 (N.D. Ill. Apr. 1, 2014) ("allegations of failure to train medical staff have been found to support a *Monell* claim" (citations omitted)).

Plaintiff further alleges that as a result of the lack of formal policies and training, widespread practices were developed by employees at the Jail under which detainees with mental health issues were routinely denied access to proper mental health treatment, and detainees who were at risk of suicide were routinely denied access to safe and secure suicide prevention cells. Am. Compl. ¶ 44. Plaintiff also alleges that these widespread practices were allowed to flourish because Sheriff Watson exhibited deliberate indifference to the problem, thereby effectively ratifying it. *Id.* ¶ 45. *See Riley*, 682 F. Supp. 2d at 861 ("[A]n official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing."); *Jordan v. Diaz*, No. 10 C 1178, 2010 WL 4576758, at *4 (N.D. Ill. Dec. 23, 2010) (finding that plaintiff sufficiently stated a *Monell* claim where he alleged that a widespread custom of ignoring detainees' serious medical conditions and unconstitutionally denying detainees' treatment for their serious medical conditions existed at the Cook County Jail and that the defendants "allowed the custom and practice of denying detainees' necessary medical treatment and thereby endorsed it"); *Sanders v. Sheehan*, No. 09 C 7707, 2010 WL 2990121, at *3-5 (N.D. Ill. July 26, 2010) (denying the City's motion to dismiss plaintiff's *Monell* claim).

Additionally, Plaintiff alleges that the practices of providing inadequate mental health services and denying access to safe and secure suicide prevention cells to detainees at risk of suicide were so widespread that they caused not only Mr. Scarpi's suicide, but also the suicides

of two other detainees: Joshua B. Jurcich, who committed suicide two months before Mr. Scarpi, and Damon E. Stidimire, who committed suicide on October 29, 2015.  Am. Compl. ¶¶ 41, 46. Furthermore, these widespread practices also caused 14 suicide attempts at the Jail between January 2014 and October 2015.  *Id.* ¶ 42.

Defendants nonetheless contend that because the individuals who attempted suicide were prevented from completing their act by Jail staff, this negates the existence of "a policy that fails to protect individuals from successfully committing suicide."  Defs. Mot. at 8.  Defendants brashly assert that the families of these individuals should be "glad Sheriff Watson's officers were there, trained to help their loved ones."  *Id.*  The fact that these individuals were prevented from successfully committing suicide does not mean that they received adequate mental health treatment or that their suicide risk was adequately abated.  Indeed, the Jail staff's failure to prevent a high number of suicide attempts in such a short time period further supports the existence of a widespread practice of failing to properly care for detainees who are at risk for suicide.

Accordingly, Plaintiff has sufficiently stated a Section 1983 claim against Sheriff Watson in his official capacity.

### III. Plaintiff Has Properly Alleged an ADA Claim (Count III)

Defendants seek dismissal of Count III of Plaintiff's complaint, contending that Plaintiff has failed to state a cause of action under Title II of the ADA.  Defs. Mot. at 8-11.  Defendant's contention must be rejected.

Title II of the ADA provides that no qualified person with a disability shall "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Seventh

Circuit has defined two distinct forms of discrimination: disparate treatment and failure to accommodate. *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). To state a failure to accommodate claim, Plaintiff must establish that: (1) Mr. Scarpi was a qualified individual with a disability; (2) Defendants were aware of Mr. Scarpi's disability; and (3) Defendants failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

First, Plaintiff has alleged facts that plausibly suggest that Mr. Scarpi had a qualified disability under the ADA. Plaintiff alleges that Mr. Scarpi lived with the disability of serious mental illness, including a generalized anxiety disorder. Am. Compl. ¶ 7. His mental health issues, exacerbated by the conditions in which he was confined, resulted in his experiencing suicidal ideations. *Id.* ¶¶ 17-20. It is reasonable to infer from these facts that Mr. Scarpi also suffered from depression. Tragically, Mr. Scarpi's mental illness and suicidal ideations eventually became so overwhelming that he took his own life. It is therefore reasonable to infer that his disability substantially limited major life activities, resulting in his death. *See Mattice v. Memorial Hosp. of Sound Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001) (finding that plaintiff qualified as disabled under the ADA where he alleged that life activities were significantly impaired by the existence of and care and treatment for panic disorder, severe depression, and suicidal ideation).

Second, Plaintiff has alleged facts that plausibly suggest that Defendants were aware of Mr. Scarpi's disability. In the hours leading up to his suicide, Mr. Scarpi actively voiced his suicidal thoughts. Am. Compl. ¶¶ 21-22. He told three of the Defendant Officers—Harris, Wilson, and Lanzante—that he was going to kill himself. *Id.* ¶¶ 22-23. And he verbalized his

suicidal ideations with other detains in the maximum security cell block. *Id.* ¶ 21. Further, another detainee informed Officer Lanzante that Mr. Scarpi was suicidal. *Id.* ¶ 23. It is therefore reasonable to infer from these facts that Defendants were aware of his disability.

Third, Plaintiff has alleged facts that plausibly suggest that Defendants failed to reasonably accommodate Mr. Scarpi's disability. Plaintiff alleges that Defendants failed to provide Mr. Scarpi with adequate mental health services. *Id.* ¶ 26. And they failed to place him in a suicide-proof cell, even after learning of his intent to kill himself. *Id.* ¶¶ 22, 32, 34, 49. Accordingly, Plaintiff has sufficiently stated an ADA claim for failure to accommodate Mr. Scarpi's disability. *See Boyd* v. *Johnson*, No. 10-cv-701-MJR, 2011 WL 1196320, at *6 (S.D. Ill. Mar. 29, 2011) (finding that plaintiff, who suffered from epilepsy and mental health conditions, sufficiently stated a failure to accommodate claim under the ADA where he alleged that defendants refused to provide reasonable accommodations to his cell—a functional emergency call button, a sign to alert guards to his seizure condition, and removal of the plexiglass cover on his door); *Brandon v. Smith*, No. 06-1316, 2008 WL 879444, at *4 (C.D. Ill. Mar. 28, 2008) (decedent committed suicide while detained at the Peoria County Jail and the court declined to dismiss the ADA claim where plaintiff alleged that the defendant failed to "reasonably accommodate [the decedent's] mental disability and that this failure resulted in [the decedent's] death").

While Plaintiff has alleged that the individual Defendants are responsible for the ADA violation, he acknowledges that the Seventh Circuit has held that there is no individual liability under the ADA and that the proper defendant is the relevant department or agency. *See Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) ("Several of the individual defendants are named in these statutory claims, but employees of the Department of Corrections

are not amendable to suit under the . . . ADA"); U.*S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). Therefore, Plaintiff has asserted his ADA claim against Sheriff Watson in his official capacity. *See Howe v. Godinez*, No. 14-cv-844-SMY, 2014 WL 4947245, at *5-6 (S.D. Ill. Oct. 1, 2014) (allowing an ADA claim against the IDOC director in his official capacity).

### IV.     Plaintiff's Illinois State Law Claims Are Not Time Barred (Counts IV-VI)

Defendants seek dismissal of Counts IV, V, and VI of Plaintiffs' complaint, contending that Plaintiff's state law claim for wrongful death is time barred. Defs. Mot. at 11-12. Contrary to Defendants' argument, Plaintiff's state law claim is not barred by the one year statute of limitations pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/8-101(a).

The Illinois Wrongful Death Act provides a claim for damages when a "wrongful act, neglect or default" caused a person's death. 740 ILCS 180/1. A wrongful death action must "be brought by and in the name of the personal representatives of such deceased person" and "the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2; *see also Fetzer v. Wood*, 569 N.E.2d 1237, 1242 (Ill. Ct. App. 1991) ("A wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." (quoting *Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568, 517 (Ill. 1989)). Although the Act provides that a wrongful death action must be commenced within 2 years after the death of the deceased, 740 ILCS 180/2(c), wrongful death actions against local governmental entities and their employees are governed by a one year statute of limitations pursuant to the Tort Immunity Act, 745 ILCS 10/8-101(a).

But, when, as in this case, the beneficiary of the wrongful death action is a minor at the time of the deceased's death, the statute of limitations is tolled until the minor turns 18. *See* 740 ILCS 180/2(c) ("if a person entitled to recover benefits under this Act, is, at the time the cause of action accrued, within the age of 18 years, he or she may cause such action to be brought within 2 years after attainment of the age of 18"); *Ferguson v. McKenzie*, 780 N.E.2d 660, 665 (Ill. 2001) (finding that because the next of kin was a minor when the wrongful death cause of action accrued, the one year limitations period of the Tort Immunity Act began to run when she reached 18 years of age).

Mr. Scarpi committed suicide on May 23, 2014, and died later that day at the hospital. Am. Compl. ¶¶ 27-28. Under the Illinois Probate Act, Mr. Scarpi's next of kin are his 17-year-old son, Dylan Delisle-Scarpi, and his 12-year-old-son, Bradley Scarpi Jr. *See* 755 ILCS 5/2-1(b); Am Compl. ¶ 55. Dylan and Bradley Jr. are therefore the exclusive beneficiaries of a wrongful death action brought by Mr. Scarpi's estate. *See* 740 ILCS 180/2. Because Dylan and Bradley Jr. are minors, the one year statute of limitations for the wrongful death action does not begin to run until Dylan is 18 years old. Therefore, Plaintiff's wrongful death claim is timely filed.[3]

### V.     Plaintiff Has Properly Alleged a Wrongful Death Claim (Count IV)

Defendants seek dismissal of Count IV of Plaintiff's complaint, contending that Plaintiff has failed to state a cause of action under the Illinois Wrongful Death Act. Defs. Mot. at 12-14.

---

[3] Defendants seek dismissal of Plaintiff's state law claims for respondeat superior against Defendant Sheriff Watson (Count V) and indemnification against Defendant St. Clair County (Count VI) on the theory that these claims are time barred because Plaintiff's state law claim for wrongful death (Count IV) is time barred. Defs. Mot. at 11-12. As explained above, Plaintiff's wrongful death claim is not time barred and, therefore, Defendants' argument lacks merit.

Specifically, Defendants argue that Mr. Scarpi's voluntary act of suicide is an intervening act that breaks the chain of causation from the tortfeasor's negligent conduct, and therefore the Defendants cannot be held liable. *Id.* (citing *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015)). Defendants further contend that Plaintiff "fails to state how the decedent's voluntary, intervening act of suicide was foreseeable by the individual Defendants." *Id.* at 13-14. Defendants' arguments lack merit.

Under Illinois law, "the general rule, applicable in negligence actions, [is] that the injured party's voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct. *Turcios*, 32 N.E.3d at 1123. However, in *Turcios*, the Illinois Supreme Court went on to state that this general rule is only applied in wrongful death actions when "the defendant [is] under no duty to decedent to prevent the suicide." *Id.* at 1124. And "Illinois law provides jailers owe a duty of care to prisoners, which includes the duty to guard against the possibility of suicide." *Belbachir v. United States*, No. 08 C 50193, 2012 WL 5471962, at *2 (N.D. Ill. Nov. 9, 2012) (citing *Dezort v. Vill. of Hinsdale*, 342 N.E.2d 468, 472-73 (Ill. App. Ct. 1976)). Thus, consistent with this reasoning, the Seventh Circuit has held that "the doctrine of supervening cause is not applicable when the duty of care claimed to have been violated is precisely a duty to protect against ordinarily unforeseeable conduct," as in the case where a detainee commits suicide. *Jutzi-Johnson v. United States*, 263 F.3d 753, 756 (7th Cir. 2001). Instead, the relevant question is whether the detainee's suicide "was a foreseeable consequence of the negligence of his jailers." *Id.*

Here, Plaintiff has alleged facts that plausibly suggest that Mr. Scarpi's suicide was a foreseeable consequence of the individual Defendants' actions and inactions. As explained in

detail above in Section I, Plaintiff has plausibly alleged that the individual Defendants knew Mr. Scarpi was a suicide risk and failed to take any measures to monitor and protect him. Am. Compl. ¶ 26. The individual defendants failed to provide him with adequate mental health services, failed to place him in a suicide-proof cell, and failed to conduct regular checks on him while he was in his cell; as a result, Mr. Scarpi committed suicide. *Id.* ¶¶ 26, 52. It is therefore certainly reasonable to infer that by their acts and omissions, the individual Defendants breached their duty to provide for Mr. Scarpi's health and safety and were the proximate cause of Mr. Scarpi's death. *Id.* ¶ 53.

Accordingly, Plaintiff has sufficiently stated a state law claim for wrongful death against the individual Defendants.

### VI. Plaintiff Has Properly Alleged a Respondeat Superior Claim Against Defendant Sheriff Watson in his Official Capacity (County V)

Defendants seek dismissal of Count V of Plaintiff's complaint, contending that Sheriff Watson cannot be held vicariously liable for the alleged unconstitutional actions of his employees. Defs. Mot. at 14-15. However, Plaintiff is not seeking to hold Sheriff Watson vicariously liable for the individual Defendant's unconstitutional conduct under Section 1983. Indeed, Plaintiff has asserted a *Monell* claim against Sheriff Watson in his official capacity for the unconstitutional policies, practices, and customs of the Sheriff's Office that caused Mr. Scarpi's injuries. Am Compl. ¶¶ 39-46. Instead, in Count V, Plaintiff is simply seeking to hold Sheriff Watson liable for the state law torts committed by his agents within the scope of their employment. *Id.* ¶¶ 56-59. Plaintiff has asserted a state law claim for wrongful death against the individual defendants, *id.* ¶¶ 50-55, and as their employer, Sheriff Watson is liable in his official capacity as principal for their misconduct under the doctrine of respondeat superior. *See Wright*

*v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996). Accordingly, Plaintiff's state law claim for respondeat superior should not be dismissed.

### VII. Plaintiff Has Properly Alleged an Indemnification Claim Against Defendant St. Clair County (Count VI)

Defendants seek dismissal of Count VI of Plaintiff's complaint, contending that there cannot be a claim for indemnification if there are no surviving claims for underlying liability against the individual Defendants. Defs. Mot. at 15. As explained above, Plaintiff has sufficiently pleaded all his claims against the individual Defendants and therefore Plaintiff's state law claim for indemnification against St. Clair County must also remain.

### CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss Plaintiff's amended complaint.

        Respectfully submitted,

        **DWAYNE WHITE**

        By: /s/ Vanessa del Valle
        One of his attorneys

Locke E. Bowman
Sheila A. Bedi
David M. Shapiro
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1271

LaToya M. Berry
Law Offices of LaToya M. Berry
901 West Main
Belleville, Illinois 62220
(618) 567-4837

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing document was electronically served on all counsel who have filed appearances in this case via the Court's CM/ECF system on September 9, 2016.

/s/ Vanessa del Valle