UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWAYNE WHITE, Administrator of the
Estate of Bradley C. Scarpi, Deceased,

      Plaintiff,

        v.

RICHARD WATSON, PHILLIP
MCLAURIN, ST. CLAIR COUNTY, MARK
J. HARRIS, BRIAN D. CUNNINGHAM,
RODNEY WILSON, CHRISTOPHER
LANZANTE, NANCY SUTHERLIN,
DAVID NICHOLS, THOMAS MESEY,
DANTE S. BEATTIE, PATRICK FULTON,
HOWARD KURTZ, NICHOLE LIEBIG and
STEVEN J. FRIERDICH,

      Defendants.

Case No. 16-cv-560-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on the defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) (Doc. 30).   Plaintiff Dwayne White, administrator of the

estate of Bradley C. Scarpi, deceased, has responded to the motion (Doc. 34).

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations

in the complaint.   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).   To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a

complaint must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."   Fed. R. Civ. P. 8(a)(2).   This requirement is satisfied if the complaint (1)

describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a

speculative level.   *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).   "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl.*, 550 U.S. at 556).   "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."   *Iqbal,*   556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule

8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   *Bell Atlantic*, 550 U.S. at 561–63;

*Concentra Health Servs.*, 496 F.3d at 777.   Now "it is not enough for a complaint to avoid

foreclosing possible bases for relief;   it must actually suggest that the plaintiff has a right to relief

. . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra*

*Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading

standard.   *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.

2007).   A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555,

and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this

complaint is deficient because it does not contain . . .' should stop and think:   What rule of law

*requires* a complaint to contain that allegation?"   *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)

(emphasis in original).   Nevertheless, a complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*,
550 U.S. at 555.   If the factual detail of a complaint is "so sketchy that the complaint does not
provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject
to dismissal.   *Airborne Beepers*, 499 F.3d at 667.

## II.      Facts Alleged

Accepting all allegations in the complaint as true, the Court finds the following relevant
facts for the purposes of this motion.

The plaintiff's decedent, Bradley C. Scarpi, was detained in the St. Clair County Jail
("Jail") from April 14, 2014, to May 23, 2014, when he committed suicide in his cell.   Scarpi
suffered from mental illness – including a generalized anxiety disorder – and drug addiction, and
had cycled in and out of the Jail for about the last decade of his life.   Defendant Major Phillip
McLaurin is the Jail's superintendent, and defendant Richard Watson is the St. Clair County
sheriff under whose authority the Jail is maintained.   The Jail does not have a suicide prevention
policy.

On May 23, 2014, at about 4:00 p.m., Scarpi reported to defendant Jail Officer Mark J.
Harris that he needed to move to a different cell because he was being threatened by other nearby
detainees.   In response, Sergeant Brian Cunningham ordered that Scarpi be moved to a different
cell block.   On his way to his new housing assignment, Scarpi told Harris and defendant Officer
Rodney Wilson, who were escorting Scarpi, that he was also in danger at his new housing
assignment.   Wilson told Cunningham of Scarpi's fear, so Cunningham order that Scarpi be
instead moved to a maximum security cell block, the E-Max cell block.   The cell to which Scarpi
was assigned was not a "suicide-proof" cell, that is, a cell designed to prevent inmates from taking

their own lives.

On his way to the E-Max cell block, Scarpi told "Defendant Officers," presumably his escorts Harris and Wilson, that he was going to kill himself.   Harris and Wilson told him to be quite and get in his cell.   Not long afterward, Scarpi also told defendant Officer Christopher Lanzante that he was going to kill himself.   Lanzante responded that Scarpi could do what he wanted to do and walked away.   At some point, another detainee in the E-Max cell block told Lanzante that Scarpi was going to kill himself.   Lanzante responded essentially that then Scarpi would be dead.   Jail personnel did not regularly check on Scarpi or provide him with mental health services.

At approximately 9:40 p.m., Lanzante discovered Scarpi hanging from his cell bars, alive but unconscious.   Defendants Lieutenant Nancy Sutherlin, Sergeant David Nichols, Officer Thomas Mesey, Officer Dante S. Beattie, Officer Patrick Fulton, Officer Howard Kurtz, Officer Nicole Liebig, and Officer Steven J. Frierdich, all of whom were working at the Jail that night, responded to Lanzante's call for assistance.   Scarpi was transported to a hospital where he died at approximately 10:17 p.m.

Scarpi's brother filed this lawsuit as the administrator of Scarpi's estate.   In the Amended Complaint, the plaintiff asserts six causes of action:

**Count I:**  a claim under 42 U.S.C. § 1983 against McLaurin, Cunningham, Harris, Wilson, Lanzante, Sutherlin, Nichols, Mesey, Beattie, Fulton, Kurtz, Liebig and Frierdich (the "individual defendants"), in their individual capacities for violation of the Fourteenth Amendment due process clause;

**Count II:**  a claim under 42 U.S.C. § 1983 against Watson in his official capacity for violation of the Fourteenth Amendment due process clause;

**Count III:**  a claim under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, against Watson in his official capacity for failure to

accommodate Scarpi's mental illness;

**Count IV:**   a claim under the Illinois Wrongful Death Act, 740 ILCS 180/1, against the individual defendants on behalf of Scarpi's two minor sons;

**Count V:**   a claim under the Illinois Wrongful Death Act under a *respondeat superior* theory against Watson in his official capacity; and

**Count VI:**   a claim against St. Clair County for indemnification for the liability of the St. Clair County Sheriff's Department employees.

The defendants now ask the Court to dismiss all counts for failure to state a claim.   The Court addresses each count in turn.

## III.   Analysis

### A.   Count I: § 1983 Claim for Due Process Violation

The plaintiff claims the individual defendants were deliberately indifferent to the serious risk that Scarpi would commit suicide when they failed to place him in a suicide-proof cell, obtain mental health services for him, and regularly check on him in his cell.   Because Scarpi was a pretrial detainee, these claims fall under the Fourteenth Amendment due process clause rather than the Eighth Amendment cruel and unusual punishment clause, which applies only to convicted prisoners.   *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015).   Nevertheless, the standard under the Fourteenth Amendment is essentially the same as the Eighth Amendment standard for cruel and unusual punishment. *Burton*, 805 F.3d at 784.

Under that standard, an official can be liable for failure to protect an inmate if he intends or was deliberately indifferent to a substantial risk of serious harm to the inmate.   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).   To meet the "deliberate indifference" standard in this context, a prison official must know of an

excessive risk to an inmate's health or safety and intentionally disregard it.  *Farmer*, 511 U.S. at

847; *Rosario*, 670 F.3d at 821.   "[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837.   It is possible to show that an official actually knew of the

risk because of circumstantial evidence or because the risk was obvious, longstanding, pervasive

or well-documented.  *Farmer*, 511 U.S. at 842.   Deliberate indifference to that risk requires a

showing of "more than mere or gross negligence, but less than the purposeful or knowing infliction

of harm" and "something approaching a total unconcern for [the detainee's] welfare in the face of

serious risks."  *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (internal quotations and

citations omitted); *accord Rosario*, 670 F.3d at 821.   It is clear that suicide is a serious harm,

*Rosario*, 670 F.3d at 821, so the Court focuses on whether the plaintiff has pled facts plausibly

suggesting the defendants were deliberately indifferent to the need to protect against it.

The plaintiff has pled sufficient facts to plausibly suggest that defendants Harris, Wilson

and Lanzante actually knew that Scarpi faced a risk of suicide and that they were deliberately

indifferent to that risk by displaying total unconcern for Scarpi's welfare in the face of that risk.

The Amended Complaint alleges Scarpi told these three defendants he was going to kill himself,

and all three defendants did nothing to alleviate the risk that Scarpi would commit suicide and, in

fact, appeared to ignore his statements.   This is enough to plausibly suggest Harris, Wilson and

Lanzante were deliberately indifferent to Scarpi's safety needs.[1]

However, the plaintiff has not pled sufficient facts to show defendants McLaurin,

Cunningham, Sutherlin, Nichols, Mesey, Beattie, Fulton, Kurtz, Liebig, or Frierdich were aware

---

[1] The fact that the plaintiff did not plead in the Amended Complaint the sources of his information
that Scarpi made statements to Lanzante is irrelevant.   He is not required to plead such factual
details.   The defendants may seek to identify those sources and to explore their credibility in
discovery.

of the risk that Scarpi might commit suicide.   The plaintiff suggests that there is circumstantial

evidence that *these* defendants knew of Scarpi's risk of suicide because Scarpi told *other*

defendants he was going to kill himself and these defendants were working in the Jail or acting as

the superintendent at the time.   He also suggests that these defendants knew Scarpi had several

risk factors for suicide – he was a young male with drug problems who had been in custody for six

weeks – and that they were aware of other suicides and suicide attempts at the Jail.   However,

those circumstances do not plausibly suggest these defendants actually knew of the risk that Scarpi

might commit suicide and then were deliberately indifferent to Scarpi's need for protection.

While the plaintiff need not plead the precise way these defendants came to have knowledge of the

risk to Scarpi, he must at least allege some plausible basis for their having that knowledge beyond

that they were in the Jail that day, which he has not done.[2]   The Court will dismiss these

defendants from Count I without prejudice and will allow the plaintiff to replead Count I against

these defendants with sufficient facts or, should those facts become apparent later, to seek leave to

amend the complaint to add those defendants back to the case.

  B.  Count II: § 1983 *Monell* Claim for Due Process Violation

  The plaintiff claims Watson in his official capacity – that is, the St. Clair County Sheriff's

Department itself, *see Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) ("§ 1983 suits against

sheriffs in their official capacities are in reality suits against the county sheriff's department") –

was deliberately indifferent to the serious risk that Scarpi would commit suicide because the Jail

had no suicide prevention policy, provided inadequate training and supervision for employees

---

[2] Whether the deliberate indifference standard of traditional Eighth Amendment analysis or the objective reasonableness standard suggested by *Kingsley* applies, the result for these defendants is the same.   No allegation suggests they were deliberately indifferent *or* that their conduct was objectively unreasonable.   The allegations do not plausibly suggest they knew anything about Scarpi.   Their actions could not have been an objectively unreasonable response to something they simply did not know about.

7

regarding detainee suicide prevention, and had a practice of routinely denying detainees with mental health problems access to mental health professionals and suicide-proof cells.   To show Watson was aware of the risk of suicide in the Jail, the plaintiff points to two suicides and fourteen suicide attempts in the Jail between January 2014 and October 2015.

A local governing body such as a sheriff's department may not be held liable under § 1983 on a *respondeat superior* theory.   *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, it can be liable under § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation.   *Monell*, 436 U.S. at 694; *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).   A governmental body is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation.   *Monell*, 436 U.S. at 694.

Here, the plaintiff has alleged that the policies – including the policy to have no policy – and widespread practices of the St. Clair County Sheriff's Department listed above were the moving force behind the failure to protect Scarpi from the known risk of suicide in the Jail.   This is sufficient to state a § 1983 claim under *Monell* for deliberate indifference to a detainee's safety needs.   That fourteen suicides attempts in the Jail were, for one reason or another, unsuccessful does not foreclose the possibility that inadequate policies amounted to a constitutional violation. Additionally, the plaintiff's failure to allege the specific aspects of the existing Jail staff training that are inadequate will not render the Amended Complaint insufficient as to Count II.

C.     Count III: ADA Failure to Accommodate

The plaintiff claims Scarpi was disabled because of his generalized anxiety disorder and that Watson denied him accommodations for that disability when Scarpi was not housed in a suicide-proof cell.

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   Under the ADA, "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a).

Regulations implementing the ADA also require a public entity to make reasonable accommodations for the known physical and mental limitations of qualified disabled individuals to enable them to access its services, programs or activities unless it would be an undue hardship. 28 C.F.R. § 41.53.   To state a failure to accommodate claim, a plaintiff must allege that (1) he is a qualified person, (2) he has a disability and (3) the defendant denied him access to a program or activity because of his disability by failing to make a reasonable accommodation.   *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (under virtually identical Rehabilitation Act).

As a preliminary matter, the Court notes the plaintiff asserts in Count III that Scarpi is disabled because of a generalized anxiety disorder and that the parties failed to accommodate his disability by assigning him to a suicide-proof cell.   Both parties read more into this claim in their briefs.   For example, the defendants believe Scarpi's disability also included drug addiction, and the plaintiff claims it included depression.   The plaintiff also complains in his brief that the failure

to accommodate included a failure to provide mental health services, a claim not articulated in his

pleading of Count III.   The Court limits its consideration of the claim as pled by the plaintiff – in

a complaint drafted by his attorneys and therefore not entitled to the liberal construction given to

*pro se* pleadings – although the plaintiff may expand his failure to accommodate claim if he files

an amended pleading.

Additionally, the parties agree that this claim is only valid as an official capacity claim

against Watson, that is, against the St. Clair County Sheriff's Department.   *Jaros*, 684 F.3d at 670;

*see* 42 U.S.C. § 12131(1) (defining "public entity").   There is no claim against any defendant in

his or her individual capacity, so the Court need not consider the disposition of any such

hypothetical claims.

The defendants argue that the plaintiff's allegation of Scarpi's disability lacks sufficient

factual support because the plaintiff does not describe how his condition limits a major life

activity, does not give details about Scarpi's generalized anxiety disorder, and does not explain

how Jail personnel became aware of Scarpi's disability.   The defendants further complain that the

plaintiff does not allege that the denial of a suicide-proof cell was because of Scarpi's disability or

that any Jail rule had a disparate impact on disabled people.   The plaintiff argues that allegations

that Scarpi had mental health issues is sufficient to plead a disability.   He further argues that the

allegations that Scarpi told Jail personnel about his thoughts of suicide are sufficient to allege

knowledge of his disability.

The plaintiff's claim is sufficiently pled.   He has pled that Scarpi was disabled by a

generalized anxiety disorder, and that is all he needs to say to allege a disability.   Whether that

condition actually severely limited a major life activity can only be determined after an

individualized examination of the condition's actual impact on Scarpi's life, *Branham v. Snow*,

392 F.3d 896, 902-03 (7th Cir. 2004), a matter which can be fleshed out on summary judgment or

at trial.   The details the defendants claim are lacking are simply not required to be pled.

To the extent the defendants complain that Scarpi has not pled facts suggesting that the Jail

declined to place him in a suicide-proof cell *because of* his generalized anxiety disorder or that any

Jail policy had a disparate impact on disabled people, he need not make any such allegations

because he is relying on a reasonable accommodation theory, an independent method of pleading a

disparate treatment claim.   Discrimination under the ADA may be established by showing "that

(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to

provide a reasonable [accommodation], or (3) the defendant's rule disproportionally impacts

disabled people."   *Washington v. Indiana High Sch. Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir.

1999).   In essence, the second theory – failure to accommodate – is that by failing to

accommodate an individual's disability so that individual can participate in services, programs or

activities, a defendant *is* denying a service, program or activity based on disability.   *See Jaros*,

684 F.3d at 672 ("Refusing to make reasonable accommodations is tantamount to denying

access.").   The plaintiff has adequately pled that Watson deprived Scarpi of a safe cell,

presumably with the consequence that he was unable to participate in some future service, program

or activity offered by the Jail because he died.   The defendants have not convinced the Court in

their current briefing that such a claim is insufficient as a matter of law.

In sum, at this point, the plaintiff has made sufficient allegations to plausibly suggest a

right to relief, and Watson has fair notice of the plaintiff's claim.   Consequently, the Court will

not dismiss Count III for failure to state a claim.   The ultimate viability of such a claim in light of

the facts can be addressed on summary judgment or at trial.

        D.      Counts IV, V and VI:   Statute of Limitations

The plaintiff filed this lawsuit on May 20, 2016, just under two years after Scarpi committed suicide.   The defendants argue that the plaintiff's three state law claims are barred by the one-year statute of limitations for claims against local governmental bodies and their employees in the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 740 ILCS 10/8-101(a).   The plaintiff argues that the wrongful death act claims are brought for the benefit of Scarpi's two minor children for whom the statute of limitations is tolled until they reach the age of eighteen.   *See* 740 ILCS 180/2(c); *Ferguson v. McKenzie*, 780 N.E.2d 660, 665 (Ill. 2001) (holding statute of limitations tolled for minor beneficiaries in wrongful death suit against local governmental entity employees until beneficiary turns eighteen, but one-year limitations period applies thereafter).

The defendants have not convinced the Court that, as a matter of law, the one-year statute of limitations for the claims for the benefit of his minor children has run since Scarpi took his own life on May 20, 2016.   Accordingly, the Court declines to dismiss Counts IV, V and VI on the basis of the statute of limitations.

        E.      Count IV:   Wrongful Death Act

The defendants argue that Scarpi's voluntary act of suicide was an independent intervening act that was unforeseeable to the individual defendants and that broke the chain of causation between the defendants' conduct and Scarpi's death.   On the other side, the plaintiff argues that the general rule the defendants cite is inapplicable because the defendants owed a duty of care to those in their custody, including the duty to guard against the possibility of their suicide.

An essential element of a claim under the Wrongful Death Act is that the defendant's breach of a duty to the decedent to protect from a foreseeable harm was the proximate cause of the decedent's death. *Bovan v. American Family Life Ins. Co.*, 897 N.E.2d 288, 292 (Ill. App. Ct. 2008). It is true that in cases alleging a defendant's negligence, generally a decedent's "voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct." *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015) (citing *Little v. Chicago Hoist & Body Co.,* 203 N.E.2d 902 (Ill. 1965)). This rule is generally true unless the defendant had a duty to the decedent to prevent the suicide. *Id.* at 1124 (citing *Winger v. Franciscan Med. Ctr.*, 701 N.E.2d 813, 820 (Ill. App. Ct. 1998) (rule inapplicable where mental health care professionals had professional duty to supervise decedent in their care with known suicidal tendencies)). Where the duty of care breached is the duty to protect against what would otherwise be an unforeseeable consequence, that consequence becomes foreseeable to the defendant, and the breach of the duty to protect against it can result in negligence liability. *See Jutzi-Johnson v. United States*, 263 F.3d 753, 756 (7th Cir. 2001). So, for example, "a hospital that fails to maintain a careful watch over patients known to be suicidal is not excused by the doctrine of supervening cause from liability for a suicide." *Id.*

Scarpi's case is like the foregoing hospital example. The defendants housing Scarpi owed a general duty of care to those in their custody, *Dezort v. Village of Hinsdale*, 342 N.E.2d 468, 472-73 (Ill. App. Ct. 1976), including the duty to protect them from harm they encounter by virtue of their detention. When Scarpi announced to Harris, Wilson and Lanzante that he was going to kill himself, suicide became foreseeable to them, and it was their duty to respond reasonably to try

13

to prevent it.   Their failure to take reasonable measures to prevent it could amount to negligence and could be actionable under the Wrongful Death Act.   Thus the plaintiff has adequately pled a claim against them under the Wrongful Death Act, and the Amended Complaint's allegations do not establish that Scarpi's suicide was a supervening cause severing the chain of causation between their conduct and Scarpi's death.

The other individual defendants, however, are different for reasons similar to those set forth in the Court's discussion of Count I – there are no facts or circumstances pled suggesting Scarpi's suicide was foreseeable to them because there are no facts or circumstances showing they had any knowledge of Scarpi or his suicide threats.   Consequently, the Court will dismiss these defendants from Count IV without prejudice under the same conditions as in Count I.

F.      Count V:   *Respondeat Superior* Liability Under the Wrongful Death Act

The defendants ask for dismissal of Count V on the ground that there is no *respondeat superior* liability for claims brought under 42 U.S.C. § 1983.   They are correct, but this claim does not seek to hold Watson liable in his official capacity (that is, the St. Clair County Sheriff's Department) under 42 U.S.C. § 1983 but under the Wrongful Death Act.   Claims seeking to hold a principal liable under the Wrongful Death Act for its agent's acts under a *respondeat superior* theory are permitted and are, in fact, common.   *See, e.g., McHale v. W.D. Trucking, Inc.*, 39 N.E.3d 595 (Ill. App. Ct.), *app. denied*, 42 N.E.3d 371 (Ill. 2015); *Davis v. City of Chi.*, 8 N.E.3d 120 (Ill. App. Ct.), *app. denied,* 20 N.E.3d 1252 (Ill. 2014); *Estate of Crandall v. Godinez*, No. 14-CV-1401, 2015 WL 1539017 (C.D. Ill. Mar. 31, 2015).   Here, at the time of their alleged wrongful conduct, Harris, Wilson and Lanzante were acting as employee agents of the St. Clair County Sheriff's Department, which can therefore be liable for their negligent acts.

14

G.      Count VI:   Indemnification by St. Clair County

The defendants ask the Court to dismiss Count VI, which seeks to have St. Clair County

pay any damages assessed against the other defendants, on the basis that the other claims will be

dismissed in this order.   Since that did not happen, the request for dismissal of Count VI has no

merit.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the

defendants' motion to dismiss (Doc. 30).   The motion is **GRANTED** to the extent it seeks to

dismiss Counts I and IV against defendants McLaurin, Cunningham, Sutherlin, Nichols, Mesey,

Beattie, Fulton, Kurtz, Liebig, or Frierdich, and those defendants are **DISMISSED without**

**prejudice**.   The motion is **DENIED** in all other respects.   The plaintiff shall have up to and

including November 18, 2016, to amend his pleading to allege sufficient facts to support Counts I

and IV against the dismissed defendants and to expand or refine the allegations in Count III.

Should a factual basis for asserting claims against those defendants later be uncovered in

discovery, the plaintiff may seek leave of court to amend his pleading promptly after discovery of

those facts.

**IT IS SO ORDERED.**
**DATED:   October 26, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**