UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWAYNE WHITE, Administrator of the Estate of
Bradley C. Scarpi, Deceased,

    Plaintiff,

v.

ST CLAIR COUNTY SHERIFF RICHARD
WATSON, ST. CLAIR COUNTY, OFFICER
MARK J. HARRIS, OFFICER RODNEY WILSON,
OFFICER CHRISTOPHER LANZANTE,
OFFICER DANTE S. BEATTIE, OFFICER
NICHOLE LIEBIG, OFFICER JON KNYFF and
OFFICER JAMES WAGENER,

    Defendants.

Case No. 16-cv-560-JPG-DGW

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the parties' various motions to exclude or limit certain expert testimony offered by the opposing side under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):

- The plaintiff's motion to exclude or limit the testimony of Tracey Reed, the defendants' expert on jail industry standards and practices (Doc. 87). The defendants have responded to the motion (Doc. 100);

- The defendants' motion to exclude the testimony of Philip J. Stanley, the plaintiff's expert in the field of corrections (Doc. 88). The plaintiff has responded (Doc. 104);

- The defendants' motion to exclude the testimony of Keith R. Curry, Ph.D., the plaintiff's expert on the standards of care for inmates suffering from mental illness in a correctional setting (Doc. 89). The plaintiff has responded (Doc. 105); and

- The plaintiff's motion to exclude certain opinions of Michael R. Jarvis, M.D., Ph.D., the defendants' psychiatric expert (Doc. 98). The defendants have responded to the motion (Doc. 106).

In light of the Court's May 2, 2018, ruling on the defendants' summary judgment motion (Doc. 113), which eliminated certain defendants and theories from the case, the Court directed

the parties to submit briefs on whether any expert opinions at issue in the pending *Daubert* motions have been rendered moot. The parties have submitted their respective positions on that question (Docs. 118 & 121).

## I.     Background

The Court reviews the facts briefly here; a fuller recitation of the facts (construed in the plaintiff's favor under the summary judgment standard) is set forth in the Court's May 2, 2018, order (Doc. 113).

The plaintiff's decedent, Bradley C. Scarpi, was detained in the St. Clair County Jail ("Jail") from April 14, 2014, to May 23, 2014, when he committed suicide. Scarpi suffered from mental illness—including generalized anxiety disorder and depression—and drug addiction. Defendant Richard Watson is the St. Clair County sheriff under whose authority the Jail was maintained.

On April 14, 2014, Scarpi was arrested and booked into the Jail. No mental health issues were revealed by the initial mental health screening, so Scarpi was placed in general population without a referral for further evaluation. A trained health care professional conducted a routine, more in-depth evaluation twelve days later and identified no mental health problem. In actuality, Scarpi was extremely upset by the recent deaths of his mother and sister and by problems he was having in the jail.

On May 23, 2014, Scarpi asked defendant Officer Mark J. Harris to change his housing assignment because he was being threatened by other nearby detainees. After talking with him, Sergeant Brian Cunningham reassigned Scarpi to another cell block but changed that assignment to the E-Max cell block when he learned Scarpi has potential enemies there too. E-Max cell block was one of the segregation cell blocks with small cells that housed only one person at a

2

time and with extreme restrictions. Harris and defendant Officer Rodney Wilson took Scarpi to his new cell in E-Max cell block. Defendant Jail Officer Jon Knyff unlocked Scarpi's new cell, and Wilson and Harris placed Scarpi in that cell. Jail policy required officers to conduct "health and well-being checks" in the E-Max cell block at least every thirty minutes.

Later that evening, on one of his cell checks, defendant Officer Christopher Lanzante found Scarpi hanging from his cell bars and summoned help. Scarpi was alive, and he was taken to the hospital, but he died later that evening.

Detainee witnesses in the E-Max cell block say that Scarpi told Harris, Wilson, Knyff and Lanzante that he was going to kill himself and that the officers did nothing to protect him. Harris, Wilson, Knyff and Lanzante deny that Scarpi said anything about suicide and assert that they had no reason to believe Scarpi posed a suicide risk. The Jail's Quiet Room/Suicide Watch Policy and Procedure ("Quiet Room policy") required employees to place a potentially suicidal detainee in a suicide-proof room called the "Quiet Room" for observation, notify medical staff, and make a psychological referral. Jail staff did not always scrupulously observe the Quiet Room policy.

The Jail conducted an investigation of Scarpi's suicide, but it was not thorough. It found that Jail staff did not violate any policies leading to Scarpi's suicide.

## II. Procedural History

The Court's May 2, 2018, order (Doc. 113) found there was sufficient evidence for a reasonable jury to find that Harris, Wilson, Knyff and Lanzante were deliberately indifferent to the risk Scarpi would commit suicide in violation of the Fourteenth Amendment (Count I)[1] and

---

[1] Since that ruling, the Seventh Circuit Court of Appeals has suggested the appropriate standard in failure to protect claims brought by pretrial detainees under the Fourteenth Amendment might be objective unreasonableness rather that deliberate indifference. *Miranda v. County of Lake*,

3

that they were liable under the Illinois Wrongful Death Act, 740 ILCS 180/1 (Count IV). It rejected the plaintiff's claims that Watson, in his official capacity as sheriff, was liable for deliberate indifference to Scarpi's suicide risk based certain Jail policies: the booking procedures, the Quiet Room policy, understaffing of the Jail, the failure to automatically screen detainees placed in segregation conditions, and the post-suicide investigation. However, it found a genuine issue of material fact regarding whether Watson was deliberately indifferent to a known, widespread practice of disregarding the Quiet Room policy (Count II).[2] It further found it could not dismiss the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, claim (Count III), the *respondeat superior* claim against Watson for wrongful death (Count V) and the claim against St. Clair County for indemnification (Count VI).

## III. Analysis

The pending motions seek to exclude testimony based on Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. In *Daubert*, the Supreme Court held that Federal Rule of Evidence 702 did not incorporate the "general acceptance" test set forth in *Frye v. United States*, 54 App. D.C. 46 (D.C. Cir. 1923). Instead, the Court held that Rule 702 required district judges to be gatekeepers for proposed scientific evidence. *Daubert*, 509 U.S. at 589; *see also General Elec. v. Joiner*, 522 U.S. 136, 142 (1997). For scientific evidence to be admissible, the Court found, a district court must find it both relevant and reliable; it must be scientific knowledge grounded "in the methods and

---

No. 17-1603, 2018 WL 3796482, at *9-12 (7th Cir. Aug. 10, 2018) (objective unreasonableness standard applies to pretrial detainee's Fourteenth Amendment medical care claim).

[2] *Miranda* did not suggest any change to the application of the deliberate indifference standard to a pretrial detainee's claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). *Miranda*, 2018 WL 3796482, at *5 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

4

procedures of science" and consist of more than "subjective belief or unsupported speculation."
*Daubert*, 509 U.S. at 589-90.

Rule 702 was amended in 2000 in response to *Daubert*, *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002), and again in 2011. In its current form, it reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702

*Daubert* was a case involving scientific opinion testimony, but the same principles apply when the subject of the opinion is not purely scientific but involves some other kind of specialized knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (tire failure opinion based on visual or tactile inspection). Indeed, with respect to all types of opinion testimony described in Rule 702, the rule:

> "establishes a standard of evidentiary reliability." [*Daubert*], 509 U.S., at 590, 113 S. Ct. 2786. It "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Id.,* at 592, 113 S. Ct. 2786. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . , the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." 509 U.S., at 592, 113 S. Ct. 2786.

*Kumho Tire*, 526 U.S. at 149; *accord Manpower, Inc. v. Insurance Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).

The defendants contend that, after the Court's summary judgment ruling, the experts offered for trial will not be helpful to the jury—and may, in fact, confuse the jury—because their testimony is not relevant to the issues remaining for trial. The plaintiff, who takes a more holistic view of relevance than the defendants, insists that his experts are needed to explain the larger picture of why Scarpi was suicidal and how placement in segregation increased his risk for suicide. Before delving farther into the arguments of the parties, it is critical to note that this case is not about the adequacies of the Jail's general treatment of a class of suicidal or potentially suicidal inmates; it is about whether the conduct of the particular defendants in this case caused or contributed to Scarpi's death by their deliberate indifference (or objective unreasonableness) or, in the case of the wrongful death count, by their negligence. With the exception of the alleged widespread practice of disregarding the Quiet Room policy, the Jail's policies are not in issue, although they may be relevant to whether the individual defendants were deliberately indifferent or unreasonable.

The Court has already found in its summary judgment ruling that the plaintiff has failed to present evidence from which a reasonable jury could conclude that the Jail's booking process was the product of deliberate indifference or that any inadequacy of the booking process caused Scarpi's death in light of the fact that he was seen by a medical professional twelve days later. Thus, any inadequacy in the booking process about which an expert might testify is irrelevant, and such testimony will not be allowed.

Similarly, the Court found there was no evidence from which a reasonable jury could conclude that the Jail's suicide prevention policy—the Quiet Room policy—was deficient; it was effective when it was implemented. Thus, the adequacy of the Jail's suicide prevention policy is no longer an issue, and any expert testimony about that subject is irrelevant.

The same goes for the Jail's alleged understaffing, the absence of screening on placement in segregation, and post-suicide investigations. These jail policies are no long in issue, and expert testimony about them is not relevant.

Likewise, events post-dating Scarpi's suicide could not have had any role in causing his suicide. The Court made that abundantly clear in its summary judgment order, but the plaintiff persists in his chronologically-challenged position that events post-dating Scarpi's suicide could somehow have affected the defendants' state of mind or could provide evidence of a "widespread practice" of ignoring the Quiet Room policy about which jail management should have known before that tragic event. They could not, so expert testimony about events after May 23, 2014, is not relevant and will not be admitted.

Notwithstanding the Court's summary judgment order eliminating multiple issues from the trial of this case, the plaintiff asks the Court to allow expert testimony about each of Scarpi's interactions with Jail officials from the moment he arrived at the jail to the point of his placement in E-Max cell block and about how those interactions did not satisfy accepted jail standards. He believes an understanding of these interactions is relevant because it will shed light on the likelihood that Scarpi actually voiced his suicidal thoughts to Harris, Wilson, Knyff and Lanzante when he was finally in E-Max cell block, a question the jury will be asked to decide. In order for this logic to hold, there would have to be some basis for concluding Scarpi would be more likely to *articulate* his suicidal thoughts, as opposed to merely *experience* them, to the degree they were caused by his Jail interactions as opposed to other factors. No expert testimony supports such a view, nor does common sense. The plaintiff asks the Court to draw a connection that is simply not there. Furthermore, the danger of unfair prejudice from hearing the many ways the plaintiff believes the Jail was deficient—but not liable, because summary

7

judgment removed that question for the most part—would substantially outweigh the probative value of such evidence under Federal Rule of Civil Procedure 403. Consequently, the Court declines to allow expert testimony on the entirety of Scarpi's 2014 stay at the Jail.

These limitations do not mean, however, that expert testimony will be completely excluded from trial. There is still room for an expert to educate a jury about the general standards, expectations, and decision-making processes of those working in or running a jail. For example, the jury will be asked to decide whether defendants Harris, Wilson, Knyff and Lanzante were deliberately indifferent (or objectively unreasonable) (Count I) or negligent (Count IV) with respect to Scarpi's risk of suicide. It will also be asked to determine under the ADA whether they responded reasonably if there was an obvious need for suicide prevention measures (Count III). Given that most jurors are unlikely to be familiar with work in a jail setting, it would be helpful for a jury to understand the conditions in which a correctional officer works and the range of reasonable correctional officer behavior in a given situation. An expert may offer relevant testimony about such subjects.

With these parameters in mind, the Court makes the following rulings on the admissibility of expert testimony:

    A.    <u>Plaintiff's Expert Witnesses</u>

        1.    <u>Phillip J. Stanley</u>

The plaintiff tenders Stanley to offer expert opinions in the field of corrections, specifically, jail operations. The Court finds Stanley is qualified as an expert in that field.

Many of Stanley's opinions, however, have been rendered irrelevant, and therefore unhelpful and potentially confusing to a jury, by the Court's summary judgment order removing numerous issues from this case. Most of Stanley's opinions are addressed to the Jail's

operational policies related to the booking process, placement in segregation, suicide prevention and detection, jail conditions, and investigation of jail deaths, all of which are no longer in issue. He does not offer any opinion touching on the alleged widespread practice of ignoring the Quiet Room policy, the only jail practice remaining in issue in this case. Stanley also offers opinions that various jail officers who are no longer—or never were—defendants in this case did not perform within the applicable professional standards. Because all of the foregoing opinions concern policies and individuals no longer at issue in this case, they would not be helpful to a jury and could be potentially confusing.

Stanley does, however, offer relevant opinions about whether the conduct of Lanzante, Harris and Wilson in responding to Scarpi's alleged suicide threats and the conduct of Lanzante in conducting safety and wellness checks in the E-Max cell block comported with the standard of care he will testify is applicable in the particular jail setting. The Court will therefore allow Stanley to testify about his view of the applicable standard, but it will not allow him to bolster or cast doubt on the credibility of witnesses testifying about what actually happened in the E-Max cell block (*i.e.*, whether Scarpi actually announced he was going to kill himself), which is the province of the jury. *See United States v. Scheffer,* 523 U.S. 303, 313 (1998) (noting that determining the weight and credibility of witness testimony is a task that belongs to the jury). Stanley will be allowed to express an opinion on whether, if the jury accepts the plaintiff's fact witnesses' testimony, the individual defendants complied with generally acceptable jail standards. The defendants may, of course, cross-examine Stanley on whether the standards he offers as appropriate actually are the proper standards and whether, if the jury accepts the defendants' testimony, they complied with the standards Stanley offers or any other arguably appropriate standard.

In sum, the Court will grant the vast majority of the motion to exclude Stanley's testimony (Doc.88) as unhelpful and potentially confusing, but it will allow him to testify only on the very narrow scope of issues set forth above, which the Court finds satisfies the standards first set forth in *Daubert* and reflected in Federal Rule of Evidence 702.

2. <u>Keith R. Curry, Ph.D.</u>

The plaintiff tenders Dr. Curry, a clinical psychologist, to offer expert opinions on the standard of care for individual suffering from mental illness in a correctional setting.

The Court finds Dr. Curry is qualified as an expert on this issue. The defendants take issue with the fact that he has not practiced psychology in an adult prison setting for more than two decades. However, the Court finds that, regardless of his lack of recent practice in the relevant area, he is qualified through knowledge, skill, experience, training and education .

As with Stanley, however, many of his opinions have been rendered irrelevant, and therefore unhelpful and potentially confusing to a jury, by the Court's summary judgment order removing numerous issues from this case. Most of Dr. Curry's opinions are addressed to the alleged inadequacies of the Jail's official policies—placement in solitary confinement without mental health pre-screening, lack of enhanced monitoring and medical/mental health treatment for those placed in solitary confinement, safe cell design in solitary confinement units—issues that are no longer in this case. He offers no opinion relevant to the assertion that the Jail had a widespread policy of not enforcing the Quiet Room policy, the only Jail policy issue remaining in this case.

The only opinion he offers that is relevant to an issue at trial is his opinion that, in the circumstances presented in the E-Max cell block, Lanzante did not satisfy generally accepted jail standards for mental health services in conducting his safety and wellness checks. The Court

will not allow Dr. Curry to bolster or cast doubt on the credibility of witnesses who may testify about what happened in the E-Max cell block leading to Scarpi's suicide, although he may be allowed to express an opinion on whether, if the jury accepts the plaintiff's witnesses' testimony, Lanzante complied with generally acceptable jail standards. The defendants may, of course, cross-examine Dr. Curry on the standards he offers as appropriate and on whether, if the jury accepts Lanzante's testimony, he complied with that or any other arguably appropriate standard.

In sum, the Court will grant the vast majority of the motion to exclude Dr. Curry's testimony (Doc. 89) as unhelpful and potentially confusing, but it will allow him to testify only on the very narrow scope of issues set forth above, which the Court finds satisfies the standards first set forth in *Daubert* and reflected in Federal Rule of Evidence 702.

B. Defendants' Expert Witnesses

1. Tracey Reed

The defendants tender Reed to offer expert opinions on jail industry standards and practices.

The Court finds Reed is qualified as an expert on this issue based on her knowledge, skill, experience, training and education in the field of corrections. The plaintiff takes issue with whether Reed's experience as a jail consultant in Kentucky gives her any specialized knowledge of standards applicable to Illinois jails beyond generalized knowledge of the subject. However, the Court finds Reed has sufficient experience in training correctional employees and auditing jails for compliance with relevant standards of specific jurisdictions and general corrections principles to make her opinion on relevant issues helpful to the jury.

Reed runs into the same problems as Dr. Curry and Stanley: the vast majority of her opinions concern issues that are now irrelevant to the case because they have been eliminated on

summary judgment. Thus, her opinions about the booking process, the adequacy of emergency care provided to Scarpi, the Jail's suicide prevention policies, the decision to house Scarpi in segregation, pre-segregation screening, the post-incident investigation.

In contrast, Reed has offered a relevant opinion that correctional officers'—specifically, Lanzante's—care of Scarpi while he was in E-Max cell block, including the performance of health and wellness checks, complied with the applicable standard of care. As with the plaintiff's experts, the Court will not allow Reed to bolster or cast doubt on the credibility of witnesses who may testify about what happened in the E-Max cell block leading to Scarpi's suicide, although she may be allowed to express an opinion on whether, if the jury accepts Lanzante's testimony, he complied with generally acceptable jail standards. The plaintiff may, of course, cross-examine Reed on the standards she offers as appropriate and on whether, if the jury accepts the plaintiff's witnesses' testimony, Lanzante complied with that or any other arguably appropriate standard. The Court will further not allow Reed to testify to other matters a jury is capable of understanding perfectly well without expert testimony (*e.g.,* limitations on what video surveillance can show).

The Court is not concerned with Reed's opinion that Lanzante's behavior complied with "legal mandates." Unlike *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *7 (N.D. Ill. Aug. 19, 2016), cited by the plaintiff, the "legal mandate" is not outcome determinative but instead is offered only to describe a standard of care set forth in a law and an opinion about whether Lanzante complied with that standard. Reed may not, however, testify that compliance with that "legal mandate" resolves any claim in this case; that ultimate legal conclusion is for counsel to argue and for the jury to decide.

In sum, the Court will grant the vast majority of the motion to exclude Reed's testimony

12

(Doc. 87) as unhelpful and potentially confusing, but it will allow her to testify only on the very narrow scope of issues set forth above, which the Court finds satisfies the standards first set forth in *Daubert* and reflected in Federal Rule of Evidence 702.

    2.    <u>Michael R. Jarvis, M.D., Ph.D.</u>

The defendants tenders Dr. Jarvis, a psychiatrist, to offer expert opinions on the psychiatric and medical evaluation and treatment provided to Scarpi while he was in the Jail. Dr. Jarvis opines from a medical perspective on the adequacy of the form used in the booking process to identify a need for further mental health evaluation, the adequacy of the medical and psychiatric care provided to Scarpi by the Jail, the significance of the risk factors for suicide, and the Jail's suicide assessment and prevention policies. While this testimony might be useful in different case—say, one that calls into question the Jail's booking, evaluation and treatment policies or a doctor's response to the presence of risk factors—it is no longer helpful in this case. It will not help a jury to determine the range of reasonable conduct expected from a correctional officer not trained in, or expected to make, policy or to perform medical or psychiatric evaluations. In light of the issues remaining in this case, Dr. Jarvis's testimony is simply no longer relevant.

In sum, the experts qualified to opine on the standard of care governing a correctional officer's treatment of an inmate in segregation may testify as to the standard of care. They may be examined and cross-examined about hypothetical sets of facts where, as the plaintiff contends, Scarpi told an individual defendant he would kill himself and where, as the defendants contend, Scarpi did not tell any individual defendant he would kill himself. They may not express an opinion on which alternate set of facts is true or on the credibility of any witness to support either set of facts, nor may they express opinions on other matters a jury is clearly qualified to

13

determine itself (*e.g.,* the limitations of video surveillance).

The foregoing rulings are subject, of course, to the opposing parties' opening the door to admission of otherwise barred evidence. The Court cautions all parties that they must refrain from trying to shoehorn in the prohibited opinions in the guise of supporting the limited scope of the opinions allowed.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the plaintiff's motion to exclude or limit the testimony of Tracey Reed (Doc. 87);

- **GRANTS in part** and **DENIES in part** the defendants' motion to exclude the testimony of Philip J. Stanley (Doc. 88);

- **GRANTS in part** and **DENIES in part** the defendants' motion to exclude the testimony of Keith R. Curry, Ph.D. (Doc. 89); and

- **GRANTS** the plaintiff's motion to exclude certain opinions of Michael R. Jarvis, M.D., Ph.D. (Doc. 98).

**IT IS SO ORDERED.**
**DATED:** September 10, 2018

             s/ J. Phil Gilbert
             **J. PHIL GILBERT**
             **DISTRICT JUDGE**