UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWAYNE WHITE, Administrator of the Estate of
Bradley C. Scarpi, Deceased,

        Plaintiff,

  v.

ST. CLAIR COUNTY SHERIFF RICHARD WATSON,
ST. CLAIR COUNTY, OFFICER MARK J. HARRIS,
OFFICER RODNEY WILSON, OFFICER
CHRISTOPHER LANZANTE, OFFICER DANTE S.
BEATTIE, OFFICER NICHOLE LIEBIG, OFFICER
JON KNYFF and OFFICER JAMES WAGENER,,

        Defendants.

Case No. 16-cv-560-JPG-RJD

## **MEMORANDUM AND ORDER**

This matter comes before the Court for case management purposes following the Court's rulings on several motions at the November 19, 2018, Final Pretrial Conference. This order summarizes and/or clarifies certain rulings and decides several outstanding issues.

**I.    Summary of Rulings**

At the Final Pretrial Conference, the Court **GRANTED** the following motions:

- Plaintiff's Motion in Limine to Bar Reference to the Detainee Witnesses' Criminal Histories (Doc. 129);

- ¶¶ 1, 2, 5-8, 10, 11, 19-22, 28, 29, 33, 36 & 37 of Defendants' Motion in Limine (Doc. 134); and

- Plaintiff's Motion for Leave to Take Supplemental Deposition of former jail supervisor Phillip McLaurin (Doc. 139).

The Court **DENIED** the following motions:

- Plaintiff's Motion in Limine to Exclude Evidence of Gully's Litigation and Settlements Against St. Clair County (Doc. 131);

- Defendants' Motion to Exclude all Witnesses, Documents, and Information pursuant to

Federal Rule of Civil Procedure 37(c) (Doc. 133);

- ¶¶ 3 and 4 of Defendants' Motion in Limine (Doc. 134), which were withdrawn by the defendants; and

- ¶¶ 9, 30 of Defendants' Motion in Limine (Doc. 134).

The reasons for—and the specific details about the terms of—the foregoing rulings were set forth at the Final Pretrial Conference and can be obtained by consulting the transcript.

**II.     Plaintiff's Motion in Limine (Doc. 128) to Bar Reference to the Specific Details of Bradley Scarpi's Criminal History**

At the Final Pretrial Conference, the Court reserved ruling on this motion. The Court now **DENIES** the motion (Doc. 128).

Where the plaintiff Estate will present evidence about the loss Scarpi's next of kin have suffered and will continue to suffer because of his death, Scarpi's adult criminal history is relevant to that question. *See Cobige v. City of Chi., Ill.*, 651 F.3d 780, 784 (7th Cir. 2011) (decedent's criminal history "is relevant to how much loss Cobige's estate and son suffered by her death"). So long as the parties refer only to the nature of Scarpi's crimes and convictions rather than the factual details of those crimes and convictions, the probative value of this evidence is not outweighed by any unfair prejudice.

Similarly, the arrest that caused Scarpi to be detained in the St. Clair County Jail is also relevant to the question of the damages his next of kin suffered as a result of his death. To avoid unfair prejudice from hearing about an arrest for which no conviction was obtained, the Court will give a limiting instruction similar to the following:

> You have heard evidence that Bradley Scarpi was detained in the St. Clair County Jail beginning in April 2014 because he had been charged with certain crimes. You should not assume that because Scarpi had been charged with those crimes that he actually committed those crimes or that he would have been convicted of those crimes. This evidence is offered only to explain his detention in the St. Clair County Jail and to assist you in deciding, if necessary, the loss Scarpi's next

of kin suffered as a result of his death.

**III.     Plaintiff's Motion in Limine (Doc. 130) to Bar Reference to the Detainee Witnesses' Disciplinary Records in the Jail**

At the Final Pretrial Conference, the Court reserved ruling on this motion. The Court now **DENIES** the motion (Doc. 130). It will consider the admissibility of the disciplinary records as the evidence unfolds. It will likely allow inquiry into the existence and magnitude of the discipline imposed as evidence of potential bias against the Jail administration and Jail employees, but not the nature of the specific disciplinary infractions unless the conduct in issue is probative of the witness's character for truthfulness or untruthfulness. Unless it is probative of truthfulness or untruthfulness, the prejudicial effect of the nature of the infraction substantially outweighs its probative value and threatens to confuse the issues for the jury and unnecessarily waste the jury's time on unimportant details. *See* Fed. R. Evid. 403. The Court will admit evidence of specific conduct, whether or not discipline was imposed, in accordance with Federal Rule of Evidence 608(b).

**IV.     Plaintiff's Motion in Limine (Doc. 132) to Admit Evidence of Suicide-Related Incidents and the Defendants' Actions and Inactions Subsequent to Mr. Scarpi's Death**

At the Final Pretrial Conference, the Court reserved ruling on this motion. The Court now **GRANTS in part** and **DENIES in part** the motion (Doc. 132).

   A.     <u>Before Scarpi's Suicide</u>

The plaintiff seeks to introduce evidence that, before Scarpi's suicide, Watson, in his official capacity (referred to here as "the Jail"), had a widespread practice of disregarding the Quiet Room policy, the Jail's suicide prevention plan requiring placement of a detainee in the "Quiet Room" when a detainee takes actions or makes verbal statements indicating he or she is suicidal. There is no real dispute that evidence of instances where the Quiet Room policy was

disregarded—that is, that detainees acted in a way or said things indicating they were contemplating suicide and were *not* moved to the Quiet Room—prior to Scarpi's death are relevant to the questions of whether the widespread practice existed at the time of Scarpi's death and whether Jail officials were on notice of and were deliberately indifferent to that practice.

The parties disagree whether the nine specific instances cited by the plaintiff actually represent a failure to implement the Quiet Room policy. For example, the plaintiff claims the Quiet Room policy was disregarded with respect to Jessica Hart, who was placed in the Quiet Room after stating she would harm herself, when she was released from the Quiet Room by medical staff, and then tried to kill herself two days later by drinking bleach. Watson argues there was no Quiet Room policy violation because Hart was placed in the Quiet Room when she articulated suicidal intentions, but did not give any suicidal indications after she was released from the Quiet Room and before she drank bleach.

The Court will allow the plaintiff to introduce evidence regarding the nine specified incidents that pre-date Scarpi's suicide and will leave it to the defendants to explore on cross-examination whether the alleged conduct really was a violation. The Court will further allow the parties to introduce evidence about the Jail's response to the alleged violations, including its assessment of whether there actually was a violation and any remedial measures. The Court cautions the plaintiff that it risks losing credibility with the jury should it overreach in advancing assertions of Quiet Room policy violations. Furthermore, the Court will, of course, consider entry of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) should the plaintiff fail to present evidence from which a reasonable jury could conclude that the Jail had a widespread practice of disregarding the Quiet Room policy at the time of Scarpi's death.

B. After Scarpi's Suicide

The parties dispute whether evidence of instances where the Quiet Room policy was disregarded *after* Scarpi's death and the investigations of Scarpi's death and those later violations are relevant to the issues in this case and admissible to show the existence of an ongoing widespread practice. The plaintiff argues they are relevant to show the existence of the widespread practice of disregarding the Quiet Room policy at the time of Scarpi's death and the Jail's deliberate indifference to that policy. It points to *Sherrod v. Berry*, 827 F.2d 195 (7th Cir. 1987), *vacated on other grounds*, 835 F.2d 1222 (7th Cir.), *remanded for new trial*, 856 F.2d 802 (7th Cir. 1988), in support of its position.

In *Sherrod*, an individual died as a result of a police officer's use of excessive force. *Id.* at 198. In addition to suing the individual officer, the plaintiff's estate also sued the municipality under the theory that it had a policy of maintaining a police force that used excessive force and failing to train and supervise its officers on the use of force. *Id.* In support of this theory, the plaintiff presented evidence of a series of incidents of excessive force, all of which were known to the municipality and its policymakers and which resulted in no discipline. *Id.* at 202. The trial judge also allowed evidence of one excessive force incident by the defendant officer that occurred a month *after* the incident at issue in the lawsuit, stating that such evidence was probative of the municipality's assertion of proper training and corrective action in response to known excessive force. *Id.* at 204-05. The Court of Appeals found this admissibility decision not to be an abuse of discretion, noting that later conduct by a municipality could be indicative of "preexisting disposition and policy." *Id.* at 205. In sum, *Sherrod* stands for the proposition that evidence of an event that occurred after the event at issue may, in some circumstances, be relevant to show a consistent practice existed before the event at issue. However, not all "post-

event evidence is automatically admissible in a section 1983 'custom or policy' case. Rather, the question that must be asked when post-event evidence is proffered is whether the evidence sufficiently relates to the central occurrence." *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991).

In the circumstances of this case, the Court finds that any relevance of events subsequent to Scarpi's suicide is outweighed by the danger of unfair prejudice and confusion from such evidence. As the Court has noted numerous times in this lawsuit, the relevant question is whether a widespread practice of ignoring the Quiet Room policy existed *at the time of Scarpi's death*. The plaintiff has pointed to what he believes is ample evidence of such a practice existing at the time of Scarpi's death, and the Court has read testimony in the summary judgment context from Jail employees admitting they did not always scrupulously observe the Quiet Room policy. Later events—some many months later and most involving very different fact patterns—are not closely related to the "central occurrence" of this case, so they shed less light on the practices at the relevant time period. While later events may be particularly helpful in cases where a preexisting practice is difficult to prove, this is not such a case. The plaintiff has thoroughly explored in discovery the practices of the Jail before and at the time of Scarpi's death and has whatever evidence exists to make its case. It need not rely on subsequent events to prove the widespread practice it asserts.

Furthermore, the Court is mindful of the danger of inflaming the jury's passions with stories of numerous suicides or suicide attempts, a very serious subject that can be emotionally draining to contemplate. Such evidence risks causing the jury to be confused or distracted from the real issues in this case: whether the Jail's deliberate indifference to a widespread practice of disregarding the Quiet Room policy was the moving force behind Scarpi's death. The question

6

in this case is not whether the Jail should be liable for other suicides or suicide attempts but whether it should be liable for Scarpi's death. There is great danger that a jury may be confused or that the Jail may be unfairly prejudiced by other later suicides or suicide attempts in the Jail such that it could not fairly consider the real questions before it.

For these reasons, the Court finds that the probative value of evidence of events following Scarpi's death is substantially outweighed by the danger of unfair prejudice or confusion. *See* Fed. R. Evid. 403. Therefore, it will not allow such evidence to be presented.

In conjunction with this ruling, the Court further **GRANTS in part** and **DENIES in part** paragraphs 12-17, 23, 25-27 of the defendants' motion in limine (Doc. 134) consistent with the foregoing.

## V. Defendants' Motion in Limine (Doc. 134)

The Court **GRANTS in part** and **DENIES in part** the following paragraphs of the defendants' motion in limine (Doc. 134):

- ¶18: The parties may introduce evidence of whether Jail officers' checks of Scarpi's cell were negligent. Other evidence regarding cell checks or the adequacy of the Jail's cell check policy is not relevant to the issues remaining in this case and will not be admitted; and

- ¶24: For general background information, the parties may introduce general evidence of Scarpi's detention at the Jail and his transfer to the E-Max cell block, but they may not go into detail about other aspects of his detention, which are no longer relevant to this case.

The Court **DENIES** the following paragraphs of the defendants' motion in limine (Doc. 134):

- ¶ 31: The Court declines to bar evidence of medical diagnoses of Scarpi prior to his detention. That evidence would be relevant to establishing he is disabled under the Americans with Disabilities Act;

- ¶ 32: The Court declines to bar certain testimony of Dwayne White, Brian White and Cindy Files. The Illinois Dead Man's Act, 735 ILCS 5/8-201, does not apply because the testimony sought to be barred is from Scarpi's relatives who are not beneficiaries of his

Estate.[1] The Dead Man's Act does not apply to their testimony because they are not parties adverse to Scarpi's Estate and are not directly interested in this action. *See People v. $5,608 United States Currency*, 835 N.E.2d 920, 924 (2005) ("A person is interested under the Dead–Man's Act if he or she will directly experience a monetary gain or loss as an immediate result of the judgment."); and

- ¶ 34: The Court declines to bar evidence of Scarpi's pain and suffering. It is true that the plaintiff's pain and suffering are not compensable injuries under the Illinois Wrongful Death Act (Counts IV and V), which provides a cause of action for the next of kin of a decedent to recover for *their injuries* resulting from the decedent's death, including damages for grief, sorrow and mental suffering. 740 ILCS 180/2; *see Murphy v. Martin Oil Co.,* 308 N.E.2d 583, 584 (Ill. 1974). However, the plaintiff may recover for pain and suffering under his other claims in this case. *See* 7th Cir. Pattern Jury Instr. 3.10 & 7.26 (2017); *see, e.g., Miranda v. County of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). Nevertheless, the Court will not allow testimony on this subject from a witness without first establishing a basis for personal knowledge of Scarpi's pain and suffering.

The Court **GRANTS** the following paragraph of the defendants' motion in limine (Doc. 134):

- ¶ 35: The Court bars testimony of Scarpi's siblings about their injuries resulting from Scarpi's death. The measure of damages to the plaintiff Estate is the damages to Scarpi's next of kin, his children, not to his siblings.

To the extent the Court has denied any motion in limine, a party may reassert that motion during the trial.

**IT IS SO ORDERED.**
**DATED: November 27, 2018**

                                  s/ J. Phil Gilbert
                                  **J. PHIL GILBERT**
                                  **DISTRICT JUDGE**

---

[1] Although Bradley White is technically the plaintiff in this case, he appears only in his official capacity as administrator of Scarpi's Estate. In his personal capacity, he is not a party to this lawsuit and has no direct interest in this action.